In re Harvey M. SESLOWSKY and Helen Seslowsky, Debtors.

Jeanette E. TAVORMINA, Trustee, Plaintiff,

v.

UNITED STATES of America, and Harvey M. Seslowsky and Helen Seslowsky, Defendants.

Bankruptcy No. 91–13250–BKC–AJC. Adv. No. 94–1041–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

May 15, 1995.

Arthur S. Weitzner, Weitzner & Co., P.A., Miami, FL, for trustee.

Kendall Coffey, U.S. Atty., and Robert J. Higgins, Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S.

William Stalions, Ft. Lauderdale, FL, for Seslowsky.

### *MEMORANDUM DECISION ON ORE TENUS MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 7056*

A. JAY CRISTOL, Chief Judge.

THIS CAUSE came before the Court on March 8, 1995, to consider the Trustee's complaint seeking subordination of the administrative claim of the United States of America ("IRS"). At the hearing, the parties represented that there were no facts in dispute. Furthermore, the parties agreed that the question of the payment of competing administrative claims, *i.e.*, that of the estate itself (consisting of attorney's fees, accountant's fees and trustee's fees) and that of the Internal Revenue Service, Department of the

Treasury, United States of America (for unpaid taxes of the estate), was solely a question of law. Because there are no disputed issues of material facts, the matter is ripe for summary judgment.

Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 157(a) and (b), 1334(b), and the district court's general order of reference. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(A), (E), (K), and (O).

### UNDISPUTED FACTS

The undisputed facts relevant to the question of the payment of administrative expenses are as follows:

1. The Debtors, Harvey and Helen Seslowsky, filed their voluntary Chapter 7 petition in bankruptcy on or about July 9, 1991.

2. At the time of the filing of the petition in bankruptcy, the Debtors owned a 50% interest in a partnership known as the 100 Lafayette Associates Partnership.

3. The interest in the 100 Lafayette Associates Partnership became property of the estate upon the filing of the Chapter 7 petition.

4. Prior to bankruptcy proceedings, the partners of the 100 Lafayette Associates Partnership had entered into a contract for the sale of a real estate asset of the partnership.

5. After the filing of the Chapter 7 petition, the Trustee did not object to the real estate transaction of the 100 Lafayette Associates Partnership.

6. The Trustee did not seek or receive the approval of the Bankruptcy Court for the sale of the real estate asset of the 100 Lafayette Associates Partnership.

7. The real estate transaction involving the partnership asset closed on August 26, 1991.

8. The net proceeds of the sale of the partnership's real estate asset was $47,460.

9. The debtor Harvey Seslowsky requested and received a $14,000 commission in conjunction with the sale of the partnership's real estate asset.

10. The assets of the 100 Lafayette Associates Partnership upon the sale of the real estate asset consisted of $75,464.

11. Thus upon the sale of the real estate asset, the bankruptcy estate's 50% interest in the 100 Lafayette Associates Partnership amounted to $37,732.

12. The Trustee accepted $35,000 in full settlement of the estate's interest in the 100 Lafayette Associates Partnership on or about December 16, 1991.

13. The 100 Lafayette Associates Partnership generated $32,844 of ordinary income for the estate in 1991.

14. As the result of the sale of the real estate asset of the 100 Lafayette Associates Partnership on August 26, 1991, the partnership interest generated $373,514 of capital gain income for the estate in 1991.

15. The estate filed a fiduciary income tax return, Form 1041, for 1991, on or about September 20, 1994.

16. The estate's tax return for 1991 reported a federal income tax liability of $111,775.

17. The estate failed to make any payment of federal income taxes for 1991 upon the filing of the 1991 return.

18. As of the date of the filing of the complaint in this adversary proceeding, the Trustee held in her possession the total sum of $41,536.24.

19. The administrative claim of the estate is approximately $10,000 (including $7,500 for trustee's attorney; $1,400 for trustee; and $1,000 for trustee's accountant).

20. The administrative claim of the United States for the unpaid estate taxes for 1991 is $111,775, plus interest according to law ($28,070.02 as of March 31, 1995).

### DISCUSSION

The Trustee filed this action against the IRS and the Debtors on October 24, 1994. In her complaint, the Trustee seeks to subordinate the administrative claim of the United States of America, for income taxes of the

bankrupt estate due and owing to the Internal Revenue Service, to the other administrative claims of the estate, particularly the Trustee's attorney's fees. For the reasons set forth below, the Court declines to subordinate the administrative claim of the United States and orders that all administrative claims be paid pro-rata as provided for by 11 U.S.C. § 726(b).

## A. The Trustee Has Improperly Invoked Section 505(b)

■ Both the caption of the adversary complaint and paragraphs 13 and 14 of the complaint improperly invoke 11 U.S.C. § 505(b), which provides, in pertinent part, as follows:

> (b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—

> (1) *upon payment of the tax shown on such return,* if . . .

Here, the Trustee does not seek a determination of the amount of tax owed by the estate. That amounted is admitted by the estate on the filed return. The United States does not dispute the amount of the tax reported due and owing on the filed return. Furthermore, the Trustee admits in the complaint that the tax shown on the return has not been paid. Thus there is no basis for determining through a judicial proceeding the amount of tax owed by the estate as the Trustee has failed to satisfy the statutory requirement of full payment. It is sufficient to recite that the estate has admitted an unpaid federal income tax liability of $111,-775, plus interest according to law ($28,070.02 as of March 31, 1995). No further determination of liability is necessary by this Court.

## B. There is No Basis for Subordinating the Claim of the Internal Revenue Service to Claims of the Trustee and Her Attorney

1. Section 726(b) provides that administrative claims, such as the IRS tax claim here, "shall be paid pro-rata"

■ There is no dispute that the claim of the Internal Revenue Service and the claims for the Trustee's fees, her accountant's fees, and her attorney's fees are administrative claims with equal status pursuant to 11 U.S.C. §§ 507(a)(1), 503(b)(1)(A) and (B). The estate has admitted its liability for the federal income taxes with the filing of the Form 1041. The United States apparently does not dispute that the amounts claimed as expenses for the Trustee's fees, her accountant's fees, and her attorney's fees are within an expected range.

The outstanding administrative claims total approximately $150,000, including the interest owed on the tax claim. On a pro-rata basis, without equitable subordination, the IRS would be entitled to the vast majority of the $41,536.24 held by the Trustee.

2. Equitable subordination is inappropriate absent misconduct and there is no allegation of any misconduct on the part of the United States

■ It is clear as a matter of law that there is no merit to the Trustee's claim for equitable subordination of either the tax liability or the interest thereon. The doctrine of equitable subordination developed as a policy against fraud and the breach of duties imposed on a fiduciary of the bankrupt, not a creditor. *Pepper v. Litton,* 308 U.S. 295, 311, 60 S.Ct. 238, 247, 84 L.Ed. 281 (1939). The doctrine has now been codified in Section 510(c) of the Bankruptcy Code, which provides in pertinent part:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all

or apart of an allowed interest to all or part of another allowed interest....

■ Equitable subordination is an unusual remedy and should be applied only in limited circumstances. *Matter of Fabricators, Inc.,* 926 F.2d 1458, 1464 (5th Cir.1991). The Court of Appeals for the Eleventh Circuit in *Allied Eastern States Maintenance Corp. v. Miller (In re Lemco Gypsum, Inc.),* 911 F.2d 1553 (11th Cir.1990), discussed the limits of equitable subordination:

> Proper exercise of the equitable subordination power can take place only where three elements are established:
>
> (1) The claimant must have engaged in some type of inequitable conduct,
>
> (2) The misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant,
>
> (3) Subordination of the claim must not be inconsistent with provisions of the Bankruptcy Act.

*Id.* at 1556, citing *In re Mobile Steel,* 563 F.2d 692, 700 (5th Cir.1977).

■ There is no allegation of misconduct on the part of the United States with respect to the tax claim in this case. Moreover, such misconduct is a virtual impossibility with respect to a federal tax liability, particularly one admitted by the estate. 11 U.S.C. § 510; *See* Notes of the Committee on the Judiciary, Senate Report No. 95–989, p. 166–7, *Bankruptcy Code, Rules and Forms,* (West Pub. Co. 1995).

■ Moreover, there exists no authority for the equitable subordination of interest on a tax claim. Cases which have permitted the equitable subordination of penalties have done so because claims such as penalties were of a "status susceptible to subordination." *Schultz Broadway Inn v. United States,* 912 F.2d 230, 233 (8th Cir.1990). See also *Burden v. United States,* 917 F.2d 115, 120 (3d Cir.1990); *Matter of Virtual Network Services Corp.,* 902 F.2d 1246 (7th Cir.1990). Interest, which is an integral part of the tax claim, and represents actual pecuniary loss to the Government, cannot be subordinated. *In re Import and Mini Car Parts, Ltd., Inc.,* 136 B.R. 178 (Bankr.N.D.Ind.1991).

Here, in fact, if there is any questionable conduct, it is that of the Trustee. While it is true that the liquidation of the partnership interest produced some income, it also produced a liability three times as great. It seems a leap of logic to reward the Trustee, by paying 100% of her expenses, for having produced cash sufficient to pay approximately one-third of the tax liability generated through the same transactions which produced the insufficient cash. Indeed, the proper course of action by the Trustee might have been to seek judicial approval for abandonment of the partnership interest, pursuant to 11 U.S.C. § 554. *See In re Maropa Marine Sales,* 92 B.R. 547 (Bankr.S.D.Fla. 1988); *See also In re Hutchinson,* 132 B.R. 827 (Bankr.M.D.N.C.1991); *In re Reich,* 54 B.R. 995 (Bankr.E.D.Mich.1985).

Abandonment of the partnership interest most likely would have benefitted the United States, the claim of which the Trustee here now seeks to subordinate. By retaining the partnership in the estate, the Trustee effectively has prevented the United States from pursuing the Debtors for the unpaid income tax liability generated by the sale of the partnership's asset, pursuant to 26 U.S.C. § 1398. Abandoning the property most likely would have permitted the United States to obtain the same cash received by the Trustee while at the same time pursue the unpaid liability, as the liability generated in 1991 would not have been dischargeable. 11 U.S.C. §§ 507(a)(8), 523. *See In re Olson,* 930 F.2d 6 (8th Cir.1991).

■ Because the Court finds no cause for subordinating the claim of the IRS to the costs of administering this case, all the administrative expenses of the estate shall be paid pro-rata. The administrative claim of the IRS consists of both the tax admitted due and owing by the estate and the interest allowed thereon according to law.

In accordance with Rule 9021 of the Federal Rules of Bankruptcy Procedure, the Court will enter a separate final judgment.

### FINAL JUDGMENT

THIS CAUSE came before the Court on March 8, 1995, to consider the Trustee's com-

plaint seeking subordination of the administrative claim of the United States of America ("IRS"), and in conformity with the Findings of Fact and Conclusions of Law of even date, it is

**ORDERED**

1. That all the administrative expenses of the estate shall be paid pro-rata and that the administrative claim of the IRS is $111,-775.00, plus interest according to law ($28,-070.02 as of March 31, 1995).

2. The Trustee is directed to file in the main case and serve on all parties in interest, a motion to determine the reasonable costs of administration accompanied by applications for compensation in accordance with Administrative Order 92–7, and a motion for authorization to distribute the property of the estate and close the estate without further notice.

**DONE AND ORDERED.**