In re **FIRST TRUCK LINES, INC.,** Debtor.

**UNITED STATES** of America, Appellant,

v.

Thomas R. **NOLAND,** Trustee, Appellee.

No. 93–4311.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 9, 1994.

Decided March 2, 1995.

Pamela M. Stanek, Asst. U.S. Atty., Cincinnati, OH, Gary D. Gray (briefed), Edward T. Perelmuter (argued), Gary R. Allen, Acting Chief (briefed), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for appellant.

Thomas, R. Noland (briefed), Robert B. Berner (briefed), Raymond J. Pikna, Jr. (argued), Altick & Corwin, Dayton, OH, for appellee.

Before: MARTIN and BATCHELDER, Circuit Judges; and ENSLEN, District Judge.*

MARTIN, J., delivered the opinion of the court, in which ENSLEN, D.J., joined. BATCHELDER, J. (p. 219), delivered a separate concurring opinion.

BOYCE F. MARTIN, Jr., Circuit Judge.

We have before us an appeal of the bankruptcy court's decision to equitably subordinate the Commissioner of Internal Revenue Service's claim for postpetition, nonpecuniary loss tax penalties to the claims of general unsecured creditors. For the following reasons we affirm the decision of the district court.

The debtor in this case, First Truck Lines, Inc., voluntarily filed for relief under Chapter 11 of the Bankruptcy Code on April 10, 1986. During the postpetition operation of its business, the debtor-in-possession did not pay to the Internal Revenue Service accrued Federal Insurance Contributions Act and Federal Unemployment Tax Act taxes. In June 1988, the debtor moved to convert the case to a Chapter 7 bankruptcy, and the bankruptcy court ordered conversion on August 1, 1988. Thomas R. Noland was appointed the Trustee. The debtor ceased operations thereafter, and liquidation of the estate assets did not produce sufficient funds

---

* The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation.

to pay all creditors in full. The bar date for filing claims under Chapter 7 was December 1, 1988.

On November 22, 1988, the Internal Revenue Service filed a "Request for Payment of Administrative Expenses" claim ("Claim 102"). Claim 102 was comprised of accrued postpetition, preconversion taxes, interest, and penalties. On April 20, 1989, the Internal Revenue Service filed an additional "Request for Payment of Administrative Expenses" claim ("Claim 107"), amending Claim 102. The bankruptcy court permitted Claim 107 to partially amend Claim 102, adding a penalty for postpetition, unpaid Federal Unemployment Tax Act taxes.

Once litigation commenced, the Commissioner and the Trustee stipulated that the tax and interest portion of Claim 102, but not the tax penalty portion, were administrative expenses with priority under 11 U.S.C. §§ 726(a)(1), 507(a)(1), and 503(b)(1) (1988). We take this stipulation to mean that all taxes and interest were in fact given a priority in the bankruptcy estate. The issue before the bankruptcy court, then, was whether administrative expense priority should be accorded to the postpetition tax penalties. The bankruptcy court held that, although postpetition tax, interest, *and penalties* were "administrative expenses" pursuant to 11 U.S.C. § 503(b), the tax penalties were subject to the court's equitable subordination powers under 11 U.S.C. § 510(c) (1988). The court then interpreted and applied its powers of equitable subordination to include the ability to subordinate a claim, not only in the case of creditor misconduct, but also in the case of postpetition, nonpecuniary loss tax penalties. In balancing the equities, the bankruptcy court reasoned that the Bankruptcy Code exhibited a preference for compensating actual losses, especially in a liquidation proceeding. Furthermore, the bankruptcy court reasoned that, unlike business creditors who had surrendered a valuable asset to the debtor, the United States had not suffered an actual pecuniary loss with regard to the penalties. The bankruptcy court concluded that the equities of the case required subordination of the Commissioner's tax penalty claim

to the claims of general unsecured creditors. The district court agreed.

The central issue in this appeal is whether a bankruptcy court may, in a Chapter 7 case, equitably subordinate postpetition, nonpecuniary loss tax penalties to any other claim, including the claims of general unsecured creditors, in the absence of creditor misconduct: here, in the absence of misconduct by the Commissioner. No other Circuit has addressed this precise issue, although three other Circuits have determined that *prepetition,* nonpecuniary loss tax penalty claims could be equitably subordinated even in the absence of creditor misconduct. *Burden v. United States,* 917 F.2d 115 (3d Cir. 1990) (Chapter 13 case); *Schultz Broadway Inn v. United States,* 912 F.2d 230 (8th Cir. 1990) (liquidating Chapter 11 case); *In re Virtual Network Servs. Corp.,* 902 F.2d 1246 (7th Cir.1990) (liquidating Chapter 11 case). Should we decide that *postpetition,* nonpecuniary loss tax penalty claims are also subject to equitable subordination in a Chapter 7 case even in the absence of creditor misconduct, we must also decide whether the bankruptcy court properly subordinated the tax penalty claim in this case.

The Commissioner argues that the bankruptcy court does not have the power to equitably subordinate the postpetition tax penalties in Claim 102 to the claims of general unsecured creditors. The Commissioner's primary assertion is that Congress has already balanced the equities with regard to postpetition tax penalty claims in a Chapter 7 case and has expressly awarded administrative expense priority to claims for postpetition taxes, interest *and penalties* under 11 U.S.C. §§ 726(a)(1), 507(a)(1), and 503(b)(1)(B) and (C). The Commissioner contends that Congress was well aware that tax penalties, by their nature, are not related to the giving of value to the debtor. Thus, knowing that the only colorable argument that can be made for equitably subordinating postpetition, nonpecuniary loss tax penalty claims is that it is unfair and unjust to award the government higher priority for a claim not based on the extension of value to the debtor, Congress still gave tax penalties administrative expense priority. The argument

continues that a bankruptcy court may not, based on the same equitable ground, disregard the will of Congress and grant equitable relief to general unsecured creditors by subordinating the tax penalty claim. The Commissioner concludes that the principles of equitable subordination enable a bankruptcy court to subordinate a postpetition tax penalty claim only in the presence of misconduct.

In support of this position, the Commissioner relies on our decision in *In re Mansfield Tire & Rubber Co.,* 942 F.2d 1055 (6th Cir.1991), *cert. denied,* 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992), and on pre–1978 Supreme Court cases permitting equitable subordination of claims because of creditor misconduct. *See Comstock v. Group of Institutional Investors,* 335 U.S. 211, 68 S.Ct. 1454, 92 L.Ed. 1911 (1948); *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Taylor v. Standard Gas & Elec. Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). The Commissioner argues that our decision in *Mansfield Tire* requires us to reverse the district court. The Commissioner construes *Mansfield Tire* as expressly rejecting the proposition that bankruptcy courts may employ equitable subordination to override Congress's priority scheme based on the court's own view of equity. *Id.* at 1062. The view of the Commissioner, while partially correct, constitutes an incomplete understanding of *Mansfield Tire.* This Court also said in *Mansfield Tire* that, while a bankruptcy court may not impose its own view of equity where Congress has set priorities, Section 510(c) expressly permits a bankruptcy court to apply the "principles of equitable subordination" to subordinate a claim "otherwise susceptible to subordination, such as a penalty." *Mansfield Tire,* 942 F.2d at 1062 (citing 1978 U.S.C.C.A.N. 5787, 6452 (statement of Rep. Edwards); 1978 U.S.C.C.A.N. 6505, 6521 (statement of Sen. DeConcini)). In *Mansfield Tire,* we decided only whether a claim for an excise tax was the type of claim susceptible to subordination, and not whether a tax penalty claim was susceptible to subordination. As to the Supreme Court cases cited above, these do not address the precise question this Court must answer and do not preclude our holding that

equitable subordination may be proper even in the absence of creditor misconduct.

The Trustee and the Commissioner agree that Congress has given postpetition tax penalties first priority as administrative expenses in a Chapter 7 case. 11 U.S.C. §§ 726(a)(1), 507(a)(1), 503(b)(1)(C). This Court, in the case of *In re Flo–Lizer, Inc.,* 916 F.2d 363, 366 (6th Cir.1990), reached the same conclusion, but we did not discuss the relationship between Section 510(c) and Section 503(b). Although the parties agree as to the priority of postpetition, nonpecuniary loss tax penalty claims, the parties disagree as to the effect of Section 510(c) on the tax penalty claim. The Trustee argues that the statutory treatment of a postpetition tax penalty as an administrative expense does not necessarily mean that the claim cannot be equitably subordinated under Section 510(c). The Trustee contends that 11 U.S.C. § 726(a)(1) provides that all Chapter 7 distributions are subject to Section 510(c), and that Section 510(c), in turn, permits equitable subordination in the appropriate case. The Trustee then relies on our opinion in *Mansfield Tire* for the proposition that tax penalties are subject to equitable subordination. *Mansfield Tire,* 942 F.2d at 1062 (distinguishing tax claims, which are not ordinarily subject to equitable subordination, from penalties, which are). In his brief, the Trustee sums up his position as follows:

> [T]he IRS's argument that equitable subordination ignores Congressional mandates for priority in reality ignores the Congressional mandate under 11 U.S.C. § 726(a) that these priorities are explicitly subject to 11 U.S.C. § 510(c). Equitable subordination of these penalties is not inconsistent with the Bankruptcy Code if the Code itself specifically authorizes it.

Here, we review the decision of the district court deciding questions of statutory interpretation *de novo. United States v. Hans,* 921 F.2d 81, 82 (6th Cir.1990). It is clear that the starting point for our inquiry into the meaning of the statutes at issue is the language used by Congress. *Estate of Floyd Cowart v. Nicklos Drilling Co.,* —— U.S. ——, ——, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992) (citing *Demarest v. Man-*

*speaker,* 498 U.S. 184, 190, 111 S.Ct. 599, 603, 112 L.Ed.2d 608 (1991)). "[W]hen a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Id.; see also United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (observing that "[T]he plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of the drafters.'") (citation omitted). However, when there is an ambiguous term in a statute, or when a term is undefined or its meaning unclear from the context of the statute, it is our duty to examine the legislative history in order to render an interpretation that gives effect to Congress's intent. *In re Vause,* 886 F.2d 794, 801 (6th Cir.1989). In this case, the interpretation of the phrase "principles of equitable subordination," found in Section 510(c), is crucial to the outcome of this case and is not defined by statute. Therefore, we must look to legislative history or case law to interpret this phrase.

■ First, we note, as did the bankruptcy court, that the tax penalty claims here were properly characterized as postpetition administrative expenses pursuant to 11 U.S.C. § 348(d). Section 348(d) states that

> a claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1307, or 1208 of this title, *other than a claim specified in section 503(b) of this title* [administrative expenses], shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

(emphasis added). Therefore, the tax penalty claim in this case is a *postpetition* claim— a claim against the estate of the bankrupt— and retains its priority under Section 726(a)(1).

■ In Chapter 7 cases, Congress gave first priority to postpetition claims for taxes and related penalty claims, as administrative expenses. However, the priority of the tax and penalty claims is specifically subject to

Section 510(c) under the terms of Section 726(a). Section 726(a)(1) reads in full:

> (a) *Except as provided in section 510 of this title,* property of the estate shall be distributed—
>
> > (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(emphasis added). Section 507(a)(1) specifies that certain claims and expenses have priority as administrative expenses. Section 507(a)(1) states:

> (a) The following expenses and claims have priority in the following order:
>
> > (1) First, administrative expenses allowed under section 503(b) of this title. . . .

Section 503(b) gives the following expenses and claims first priority status as administrative expenses:

> (b) After notice and a hearing, there shall be allowed, administrative expenses . . . including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;
> >
> > (B) any tax—
> >
> > > (i) incurred by the estate. . . .
> >
> > (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph;

Thus, a tax penalty relating to a tax incurred by the estate has first priority. However, Section 726(a)(1) makes the priority subject to Section 510. Subsection 510(c) permits equitable subordination and it reads:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>
> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or

all or part of an allowed interest to all or part of another allowed interest;

11 U.S.C. § 510(c)(1).

Given "a normal commonsense reading" of the statutes to this point, *United States v. X-Citement Video, Inc.,* —— U.S. ——, ——, 115 S.Ct. 464, 472, 130 L.Ed.2d 372 (1994) (Stevens, J., concurring), the language used by Congress gives tax penalty claims administrative expense priority *subject to* the bankruptcy court's equity powers. However, as Section 510(c) provides, the court's power may not be exercised arbitrarily, but only pursuant to the principles of equitable subordination. The phrase "principles of equitable subordination" is not, however, defined by the Bankruptcy Code. Thus, in order to comprehend the scope of the bankruptcy court's equitable subordination powers, we look to any relevant case law and at the legislative history to determine what Congress meant by the phrase "principles of equitable subordination."

Both the district court, and the Seventh Circuit in *Virtual Network Services,* examined in detail the legislative history of Section 510(c), as well as the meaning properly accorded that history. We agree with the Seventh Circuit's view that the statements of Representative Edwards and Senator DeConcini provide the most reliable indicia of the legislative intent as to the meaning of the phrase "principles of equitable subordination." We recite here the oft-quoted passage from identical statements made by Representative Edwards and Senator DeConcini to their respective houses of Congress regarding Section 510(c):

> It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if [the] holder of such claim is guilty of inequitable conduct, *or the claim itself is of a status susceptible to subordination,* such as a *penalty* ....

*Virtual Network Services,* 902 F.2d at 1248; 11 U.S.C.A. § 510(c) note (1993) (Legislative Statements) (emphasis added); 124 Cong. Rec. H11,095 (Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S17,412 (Oct. 6, 1978) (statement of Sen. DeConcini). What did Representative Edwards and Senator DeConcini mean by stating that a "penalty" is the type of claim susceptible to subordination? In the context of the distribution scheme of Section 726(a), perhaps they meant that penalties, other than tax penalties, are subject to the court's equitable subordination powers. Or they may have intended that only tax penalties that are punitive in nature, i.e. nonpecuniary loss penalties, be subject to equitable subordination. Despite the lack of clarity as to what Congress meant by claims that are "of a status susceptible to subordination," we must attempt to determine what claims are subject to equitable subordination. In any event, the legislative history indicates that penalty claims are susceptible to equitable subordination. Because Congress intended the "principles of equitable subordination" to follow existing case law, we turn now to such case law as it existed in 1978 when the Bankruptcy Reform Act became effective. We will also examine further legislative history addressing what Congress may have meant when it specified a "penalty" claim as the type of claim susceptible to subordination.

At the time of the enactment of the Bankruptcy Code (Nov. 6, 1978), the case law on the principles of equitable subordination included three Supreme Court cases subordinating certain claims due to creditor misconduct and one appellate case subordinating the claims of defrauded shareholders, despite the absence of misconduct. *Comstock,* 335 U.S. 211, 68 S.Ct. 1454; *Pepper,* 308 U.S. 295, 60 S.Ct. 238; *Taylor,* 306 U.S. 307, 59 S.Ct. 543; *In re Stirling Homex Corp.,* 579 F.2d 206, 211 (2d Cir.1978) (affirming equitable subordination of the claims of allegedly defrauded stockholders to the claims of general unsecured creditors; stockholders were not guilty of misconduct), *cert. denied,* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979). The Commissioner argues that the principles of equitable subordination should not be expanded beyond cases of creditor misconduct, and certainly may not include the power to subordinate a postpetition tax penalty. To support this position, the Commissioner primarily relies on the absence of case law

permitting the equitable subordination of tax penalty claims.

This absence of case law equitably subordinating tax penalty claims is explained by the fact that prior to 1978, nonpecuniary loss tax penalty claims against the estate of the bankrupt were not allowed by law. Under the Bankruptcy Act of 1898, and the ensuing reenactment of this provision in 1952, nonpecuniary loss tax penalty claims against the bankrupt's estate were simply not allowed as claims. "Debts owing to the United States ... as a penalty ... shall not be allowed, except for the amount of the pecuniary loss sustained...." Bankruptcy Act of 1898, ch. 541, § 57(j), 30 Stat. 561; 11 U.S.C. § 93(j), 66 Stat. 424 (1952). In 1961, the Supreme Court interpreted Section 93(j) broadly to disallow both secured and unsecured claims for tax penalties against the estate of the bankrupt. *Simonson v. Granquist*, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962).

> [T]his section [57(j)/93(j)], which has been part of the Bankruptcy Act since its enactment in 1898, is in keeping with the broad aim of the Act to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, *the prohibition of all tax penalties in bankruptcy* is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors.

*Id.* at 40–41, 82 S.Ct. at 539 (emphasis added); *see also United States v. Coleman*, 344 F.2d 903, 909 (6th Cir.1965) (noting that "[57(j)/93(j)] plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a 'pecuniary' loss").

■ Moreover, a few Circuits have recently developed the principles of equitable subordination to recognize the power of the bankruptcy court to subordinate a prepetition, nonpecuniary loss tax penalty claim. The Third, Eighth, and Seventh Circuits have held that prepetition, nonpecuniary loss tax penalties are subject to equitable subordination in the appropriate case without a showing of governmental misconduct. *Burden*, 917 F.2d at 115 (holding that prepetition, nonpecuniary loss tax penalties may be subordinated in a Chapter 13 case; bankruptcy court must balance equities; creditor misconduct not required); *Schultz Broadway Inn*, 912 F.2d at 230 (holding that equitable subordination provision applies to prepetition tax penalty claims of governmental units; misconduct not required; general unsecured creditors suffering actual losses should receive preference over Government's claim for prepetition, nonpecuniary loss penalty in liquidating Chapter 11 case); *Virtual Network Services*, 902 F.2d at 1246 (holding that bankruptcy court may equitably subordinate claim of IRS for prepetition, nonpecuniary loss tax penalties in liquidating Chapter 11 case; inequitable conduct not required). While these cases all concerned prepetition penalties, the reasoning of these Circuits is equally applicable to postpetition penalties because the priority of both pre- and postpetition penalties is governed by 11 U.S.C. § 726(a), and this entire provision is subject to Section 510(c). Further, the legislative history of the sections we address indicates that Congress intended nonpecuniary loss tax penalties to be subject to the bankruptcy court's power to ensure that the distribution of the estate in a Chapter 7 case is equitable.

■ In Chapter 7 cases, Congress assigned differing priorities to pre- and postpetition penalties. 11 U.S.C. §§ 726(a)(1) and 726(a)(4). As discussed above, Section 726(a)(1) gives administrative expense priority to *postpetition* tax penalty claims. However, unlike Section 726(a)(4), Section 726(a)(1) and its related statutes (Sections 507(a)(1) and 503(b)) do not distinguish between tax penalties that are compensatory in nature and those that are not. Section 726(a)(4), however, makes such a distinction and gives fourth priority to claims, "for any ... penalty ... arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such ... penalty ... [is] not compensation for actual pecuni-

ary loss suffered by the holder of such claim." In other words, prepetition, as well as pre-appointment of trustee claims (whether pre- or postpetition), for nonpecuniary loss tax penalties are relegated to fourth priority. What priority Congress intended to give prepetition *pecuniary loss* tax penalty claims is unclear. Nevertheless, the language of Section 726(a)(4) indicates that in the collective mind of Congress a distinction exists between nonpecuniary loss ("punitive") penalties and pecuniary loss ("compensatory") penalties, at least so far as prepetition tax penalties are concerned.

This distinction surfaces elsewhere in the Bankruptcy Code. In Section 505, for example, the bankruptcy court is empowered to determine "the amount or legality of any tax ... or penalty relating to a tax." Prior to the approval of the final version of S. 2266, Senator DeConcini explained the House amendment to the Senate amendment to Section 505:

> The House Amendment authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, of the debtor or the estate. This authority applies, in general, whether or not the tax, penalty, fine, or addition to tax had been previously assessed or paid....The House amendment also adopts the substance of the Senate bill rule permitting the bankruptcy court to determine the amount of any penalty, *whether punitive or pecuniary in nature*, over which it has jurisdiction.

124 Cong.Rec. S17,426–27 (Oct. 6, 1978) (statement of Sen. DeConcini); 124 Cong. Rec. H11,110 (Sept. 28, 1978) (statement of Rep. Edwards) (emphasis added). The distinction between punitive and pecuniary loss tax penalties also appears in Senator DeConcini's statements regarding Section 502 [Allowance of Claims] and regarding the priority scheme in Section 507. As to Section 502, Senator DeConcini stated:

> The Senate amendment allowed this reduction [tax claim resulting from reduction in FUTA tax credit], but would have subordinated it to other claims in the distribution

of the estate's assets by treating it as a *punitive (nonpecuniary loss) penalty*.

124 Cong.Rec. S17,426 (Oct. 6, 1978). The distinction between pecuniary loss and nonpecuniary loss penalties is continued in Senator DeConcini's statement regarding Section 507 (to which Section 726(a)(1) refers). This statement implies that pecuniary loss tax penalties have first priority:

> The House amendment also adopts the provisions of the Senate amendment which include in the definition of administrative expenses under section 503 any fine, penalty (including "additions to tax" under applicable tax laws) or reduction in credit imposed on the estate....For purposes of the above [Section 507] priority rules, the House amendment adopts the provision of the Senate bill that any tax liability which, under otherwise applicable tax law, is collectible in the form of a "penalty," is to be treated in the same manner as a tax liability. In bankruptcy terminology, such tax liabilities are referred to as pecuniary loss penalties. Thus, any tax liability which under the Internal Revenue Code or State or local tax law is payable as a "penalty,"... will be entitled to the priority which the liability would receive if it were expressly labeled as a "tax" under the applicable tax law. However, *a tax penalty which is punitive in nature is given subordinated treatment under section 726(a)(4)*.

124 Cong.Rec. S17,428–30 (Oct. 6, 1978) (statement of Sen. DeConcini); 124 Cong. Rec. H11,113 (Sept. 28, 1978) (statement of Rep. Edwards) (emphasis added).

The foregoing paragraph is evidence of Congress's desire to give first priority to something it calls "pecuniary loss penalties," if such things exist, and to give fourth priority to tax penalties that are truly penalties—i.e., that are punitive in nature. In light of this legislative history, including the distinction Congress has made between pecuniary loss and nonpecuniary loss tax penalties, we believe that Congress intended nonpecuniary loss, punitive penalties to be subject to the bankruptcy court's equitable subordination powers under Section 510(c). As mentioned above, both Section 726(a)(1) and 726(a)(4)

are subject to the courts'· equitable subordination power under Section 510(c). This result is in accord with the Third, Seventh and Eighth Circuits' decisions interpreting the principles of equitable subordination to include the power to subordinate nonpecuniary loss tax penalties in bankruptcy cases under other chapters of the Bankruptcy Code.

In drafting Section 726(a)(1) and making it subject to Section 510(c), Congress made postpetition, nonpecuniary loss tax penalties, traditionally disallowed in bankruptcy, subject to the bankruptcy courts' equitable subordination power. A review of the sketchy legislative history on Section 510(c) reveals a statement by both of the leading legislators on this issue referring to penalties as a type of claim susceptible to subordination. The legislative history also reveals that Congress intended the courts to continue to develop the principles of equitable subordination. Therefore, we do not believe that Congress intended to arrest the development of the principles of equitable subordination as of 1978. Neither do we believe that the development of this area of law is restricted to cases of creditor misconduct. Compelling reasons of justice and equity, as well as our interpretation of the plain language of the statutes, and the legislative history regarding the purposely undefined phrase "principles of equitable subordination," move this Court to agree with the other Circuits that nonpecuniary loss tax penalty claims are one type of claim subject to equitable subordination.

■■■ The essence of bankruptcy is equity. While Congress has over the years recodified traditional notions of equity, the current Code vests in the bankruptcy court significant discretion and equitable powers. However, the bankruptcy court's equitable subordination powers must be exercised within the confines of the Bankruptcy Code. *In re Granger Garage, Inc.*, 921 F.2d 74, 77 (6th Cir.1990). An examination of the Code reveals that the bankruptcy courts have the power to subordinate any claim to any other claim under the principles of equitable subordination; Congress has left the development of these principles to the courts. The wisdom of such a course is obvious, given the many ways in which parties to a bankruptcy

seek advantage in recouping losses. We do not see the fairness or the justice in permitting the Commissioner's claim for tax penalties, which are not being assessed because of pecuniary losses to the Internal Revenue Service, to enjoy an equal or higher priority with claims based on the extension of value to the debtor, whether secured or not. Further, assessing tax penalties against the estate of a debtor no longer in existence serves no punitive purpose. Because of the nature of postpetition, nonpecuniary loss tax penalty claims in a Chapter 7 case, we believe such claims are susceptible to subordination. To hold otherwise would be to allow creditors who have supported the business during its attempt to reorganize to be penalized once that effort has failed and there is not enough to go around. Furthermore, to hold otherwise could result in rewarding the debtor-in-possession, the party who failed to pay the taxes on time, to the detriment of the creditors. The debtor-in-possession remains liable individually for the postpetition tax penalties. However, if the bankruptcy· court cannot subordinate these penalties in the appropriate case, the creditors, and not the debtor-in-possession, will have borne the burden of paying the penalties.

■■■ Our decision today does not mean that every tax penalty assessed by the Commissioner will be equitably subordinated. Section 726(a)(1) does not require automatic subordination, and, as we have observed, there may be cases where "penalties" are not actually punitive in nature but represent compensation for some actual loss. Section 505 leaves this determination to the bankruptcy court. As with every claim for equitable subordination under Section 510(c), the bankruptcy court must weigh the equities involved. We turn, then, to whether the bankruptcy court properly subordinated the tax penalty in this case.

■■■ The bankruptcy court determined that a postpetition tax penalty claim could be equitably subordinated if the equities so required. The court went on to find that the equities balanced in favor of general unsecured creditors who suffered actual losses, as opposed to the Commissioner whose actual losses, the tax and interest claims, retained

their first priority status. Because the parties agreed that the tax penalty claim was for nonpecuniary loss, the bankruptcy court did not have to decide that issue in balancing the equities of the case. Therefore, because the bankruptcy court did not clearly err in making its findings of fact, or err in its application of the law, we believe that the district court properly affirmed the decision of the bankruptcy court equitably subordinating the Commissioner's postpetition tax penalty claim to the claims of general unsecured creditors. We therefore **AFFIRM** the judgment of the district court.

BATCHELDER, Circuit Judge, concurring.

I write separately only to express my view that 11 U.S.C. § 726(a) is clear and unambiguous and therefore we. have no reason to speculate about the intent of particular legislators or of the Congress as to what was intended by that section. As the majority opinion points out, the Supreme Court has made it clear that we are to look to the language of the statute to determine the statute's meaning. When the statute speaks with clarity to the issue we address, our inquiry is, "in all but the most extraordinary circumstances," over. *Estate of Floyd Cowart v. Nicklos Drilling Co.,* —— U.S. ——, ——, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992) (citation omitted), *cert. denied sub nom. Barger v. Petroleum Helicopters, Inc.,* —— U.S. ——, 112 S.Ct. 3026, 120 L.Ed.2d 897 (1992). There are no such extraordinary circumstances present here.

Section 726(a) says that except as provided in 11 U.S.C. § 510, property of the estate is to be distributed first to pay claims of the kind and in the order specified in 11 U.S.C. § 507. Section 510 permits equitable subordination of claims. Section 507 governs priorities and gives first priority to administrative expenses allowed under § 503. Title 11 U.S.C. § 503 governs allowance of administrative expenses and allows as an administrative expense any tax incurred by the estate and any penalty relating to a tax incurred by the estate. By definition, penalties on taxes incurred by the estate are postpetition penalties. Section 503 does not set any priorities among administrative expenses; it simply identifies what those expenses are. Read together, §§ 726, 507, and 503 require that when property is distributed in a Chapter 7 proceeding, it goes first to pay administrative expenses, which include taxes incurred by the estate and penalties relating to those taxes, and that this entire distribution scheme is subject to the equitable subordination power of the court as set out in § 510.

I have no quarrel with the majority's exploration of the legislative history behind § 510(c) in order to determine what the Congress intended by the term "principles of equitable subordination," which is nowhere defined in the statute. Noting the absence of case law equitably subordinating tax penalty claims at the time the Bankruptcy Code was adopted, the majority rightly concludes that this absence of case law is explained by the fact that before the Code was enacted, nonpecuniary loss tax penalty claims against the estate were simply not allowed at all. Further, the majority looks to subsequent case law, noting that that body of law permits equitable subordination of prepetition nonpecuniary loss tax penalty claims. So far; so good.

Having determined the meaning of "principles of equitable subordination," however, nothing requires us to delve into the legislative history of § 726. Specifically, nothing in § 726 itself permits, much less requires, a review of the legislative history of that section as part of our analysis of whether postpetition nonpecuniary loss tax penalties are subject to equitable subordination. Section 726(a) explicitly, clearly, and unambiguously makes the distribution of the property of the estate subject to the provisions of § 510. Postpetition nonpecuniary loss tax penalties are therefore subject to equitable subordination. End of story.

Because the unambiguous language of § 726 permits the equitable subordination of postpetition tax penalties, it is not necessary for us to undertake any further analysis. Indeed, it is necessary that we not do so.