**In re CASSIS BISTRO, INC., Debtor.**

**Bankruptcy No. 94–12212–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

Nov. 7, 1995.

Phillip M. Hudson, III, Kelley, Drye & Warren, Miami, Florida, for Debtor.

Joel S. Knee, Hollywood, Florida, for DOR.

Kathleen Donohue, IRS District Counsel, Miami, Florida.

### MEMORANDUM OPINION AND ORDER SUBORDINATING TAX PENALTY CLAIMS

ROBERT A. MARK, Bankruptcy Judge.

Cassis Bistro, Inc., the debtor in this Chapter 11 case (the "Debtor"), seeks to subordinate nonpecuniary tax penalty claims for purposes of distribution under its confirmed liquidating plan. For the reasons that follow, the Court finds that the nonpecuniary tax penalty claims in this case can and should be subordinated to other allowed unsecured claims pursuant to § 510(c) of the Bankruptcy Code.

### FACTUAL BACKGROUND

On June 3, 1994, the Debtor filed a voluntary petition for relief under Chapter 11. On July 29, 1994, the Court approved a sale of substantially all of the Debtor's assets, consisting primarily of its lease and liquor license for a restaurant located in Miami Beach, Florida, for $225,000 cash and other consideration. After the payment of brokerage commissions, closing costs and interim fees to Debtor's counsel, the estate retained a balance of approximately $185,000.

The Chapter 11 liquidating plan, confirmed February 16, 1995, provides for the payment of approximately $30,000 in administrative expenses, and approximately $110,000 in priority claims consisting largely of Internal Revenue Service ("IRS") and Florida Department of Revenue ("DOR") priority tax claims. The plan provides for pro rata distribution of the remainder of the estate to the holders of general unsecured claims.

Debtor's failure to timely pay taxes gave rise to claims for prepetition tax penalties. The IRS claims a prepetition tax penalty liability of $32,232.80, and the DOR claims a prepetition tax penalty liability of $15,318.64. Both claims are filed as general unsecured claims. The aggregate of these tax penalty claims is $47,551.44. Non-tax allowed general unsecured claims total approximately $70,-000. Therefore, subordinating the tax penalty claims will significantly increase the distribution to general unsecured creditors.

On August 7, 1995, the Debtor filed its Motion to Subordinate the Claims of the Internal Revenue Service and All Taxing Authorities with Regard to Unsecured Priority Claims in the Nature of Penalties ("Motion to Subordinate"). The Debtor argues that allowing the tax penalty claims to share pro rata with other unsecured claims will significantly dilute the dividend to the non-tax creditors. The Debtor also argues that subordination is appropriate since the IRS and DOR are receiving full payment plus interest of their underlying priority tax claims. The Debtor does not allege any inequitable conduct by the taxing authorities.

The IRS did not file a written response to the Motion to Subordinate, but did object at the August 29, 1995 hearing on the motion. The IRS argues that subordination is improper in the absence of inequitable conduct.

### DISCUSSION

The Motion to Subordinate and IRS objection present two issues. First, is it permissible to subordinate tax penalty claims under § 510(c) without proof of inequitable conduct by the creditor? Second, if subordination is permissible, should the Court order subordination under the facts of this case?

**A. Equitable Subordination of Tax Penalty Claims Under § 510(c) Does Not Require Proof of Inequitable Conduct**

Pursuant to § 510(c) of the Bankruptcy Code, the Court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." Thus, the statute clearly grants this Court authority to subordinate the IRS and DOR nonpecuniary tax penalty claims to the allowed unsecured claims of the estate's general creditors. The question is, can the statute be used in the absence of tax creditor misconduct?

Both the Seventh and Eighth Circuits have specifically considered the issue. *In the Matter of Virtual Network Services Corp.,* 902 F.2d 1246 (7th Cir.1990); *Schultz Broad-*

way Inn v. United States, 912 F.2d 230 (8th Cir.1990). Both courts concluded that bankruptcy courts may subordinate nonpecuniary tax penalty claims in Chapter 11 cases under § 510(c) without finding wrongful or inequitable conduct. The Third and Sixth Circuits have reached the same conclusion in related circumstances. United States v. Noland (In re First Truck Lines, Inc.), 48 F.3d 210 (6th Cir.1995) (bankruptcy court can equitably subordinate postpetition tax penalty claims in a Chapter 7 case even in the absence of misconduct); Burden v. United States, 917 F.2d 115 (3d Cir.1990) (creditor misconduct is not a prerequisite to equitable subordination of tax penalty claims in a Chapter 13 case).

Although the Eleventh Circuit has not addressed this issue, lower courts in this circuit have reached the same result. See e.g. In re Airlift International, Inc., 120 B.R. 597 (S.D.Fla.1990) (affirming bankruptcy court decision subordinating tax penalty claims arising out of debtor's failure to adequately fund its pension plans); Diasonics, Inc. v. Ingalls, 121 B.R. 626 (Bankr.N.D.Fla.1990) (penalty tax or punitive damage claim may be subordinated without inequitable conduct).

The IRS cited a recent decision by Chief Judge Cristol of this Court to support its argument that the debtor must prove inequitable conduct. In re Seslowsky, 182 B.R. 612 (Bankr.S.D.Fla.1995). Seslowsky is not helpful to the Government. In that case, the trustee attempted to subordinate administrative tax claims. In denying relief, Judge Cristol held that proof of inequitable conduct was a prerequisite for equitable subordination of the tax claim. 182 B.R. at 616. The Court went on to explain, however, that this element was required because the claim at issue was a claim for unpaid taxes representing an actual pecuniary loss. The Court did not disagree with the holding in Schultz and Virtual Network. Rather, these decisions were referred to but distinguished as cases involved nonpecuniary tax penalty claims. Id. Thus, Seslowsky provides no support for the IRS argument that inequitable conduct is a prerequisite to subordination of tax penalty claims.

■ After review of the applicable authority, this Court concurs with the holding and analysis of the decisions which concluded that tax penalty claims may be subordinated without proof of creditor misconduct. In particular, the Court finds persuasive the analysis of legislative history undertaken by the Seventh Circuit in Virtual Network and adopted by the Eight Circuit in Schultz. Citing to the final hearings on the Bankruptcy Reform Act of 1978, both courts focused on the statements made by Representative Edwards and Senator DiConcini. In discussing § 510(c), Edwards made the following statement:

> It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor.

124 Cong.Rec. H11,089, H11,095 (1978) (emphasis added) (statement of Rep. Edwards), reprinted in 1978 U.S.Code Cong. & Admin.News 6436, 6452; see also 124 Cong.Rec. S17,406 S17,412 (1978) (statement of Sen. DiConcini), reprinted in 1978 U.S.Code Cong. & Admin.News 6505, 6521. These statements provide persuasive authority that Congress intended § 510(c) to encompass penalty claims without the need to prove inequitable conduct. Virtual Network, 902 F.2d at 1249; Schultz, 912 F.2d at 232.

Both Virtual Network and Schultz also discussed the reasons for permitting subordination of tax penalty claims. Noting that the legislative history of the Bankruptcy Code generally prefers claims for actual losses over purely punitive claims, the Schultz court found that under the facts of that case, "the general unsecured creditors who suffered actual losses should receive preference over the Government's claim for a non-pecuniary loss tax penalty in this liquidating Chapter 11." 912 F.2d at 234. The Court in Virtual Network observed that "the penalty provisions in the tax code are expressly meant to deter and punish: two goals in contravention of

any equity or equitable considerations." 902 F.2d at 1249.

In sum, this Court agrees with the reasoning and holdings in *Virtual Network* and *Schultz* and concludes that the Debtor may seek subordination of the IRS and DOR penalty claims under § 510(c).

**B.  *Subordination of the Tax Penalty Claims is Appropriate in this Case***

Although the Debtor does not have to prove inequitable conduct to justify subordination of tax penalty claims, the Court must still find that subordination is justified by the equities in this case. *See Burden v. United States,* 917 F.2d at 120 (remanding case for lower court to consider whether facts and circumstances justified subordination of penalty claims).

The equities in this case strongly favor subordination. First, the penalty claims are clearly nonpecuniary claims representing penalties relating to the Debtor's failure to withhold FICA taxes. Second, both the IRS and DOR are receiving full payment plus interest on their actual tax claims since these claims are entitled to priority under § 507(a)(7) (now § 507(a)(8)) of the Bankruptcy Code. Third, after payment of administrative claims and priority claims, likely to aggregate in excess of $140,000, the monies available for distribution to general unsecured creditors will yield only a partial dividend. It would be inequitable for this dividend to be further diluted by having the wrongdoer's estate pay the penalty claims to the detriment of innocent creditors. *See In re Airlift International, Inc.,* 120 B.R. at 602.

Subordination is not only appropriate, but may indeed be mandated as part of the liquidating Chapter 11 plan in this case to meet the requirements of § 1129(a)(7). Section 1129(a)(7), the commonly called "best interest of creditors test", requires creditors to receive a distribution not less than they would receive if the debtor were liquidated under Chapter 7 on the effective date of the plan. The tax penalty claims at issue here would be subordinated to the other allowed unsecured claims under § 726(a)(4) if this estate was liquidated under Chapter 7. Therefore, assuming that the additional administrative expenses in a Chapter 7 would be less than the amount of the penalties, unsecured creditors would fare better in a Chapter 7 unless the penalty claims were subordinated for distribution under the Chapter 11 plan. Thus, subordination of the IRS and DOR penalty claims may be necessary in order for the liquidating plan in this case to satisfy the best interest of creditors test.

Whether or not the best interest of creditors test could have been satisfied in this case without subordination, reference to this § 1129(a)(7) confirmation requirement provides additional support for subordinating nonpecuniary tax penalty claims in a liquidating Chapter 11 case. It would make no sense to require a conversion to Chapter 7 (with its attendant administrative expenses) solely to obtain the statutory right to subordinate these claims in a liquidation when § 510(c) provides an appropriate vehicle for achieving the same legitimate goal.

***CONCLUSION***

Payment of tax penalty claims in this case pro rata with other general unsecured claims would harm innocent creditors in favor of taxing authorities which are already receiving full payment plus interest on their underlying tax claims. Equitable subordination of these penalty claims is both permissible under § 510(c) and appropriate under the facts of this case.

Therefore, it is—

ORDERED as follows:

1.  The Motion to Subordinate is granted.

2.  The IRS penalty claim in the amount of $32,232.80 and the DOR penalty claim in the amount of $15,318.64 shall be allowed as general unsecured claims but subordinated, for purposes of distribution, to the other allowed general unsecured claims treated in Class I of the Debtor's Plan of Reorganization.

DONE AND ORDERED.