79 F.3d 579
 64 USLW 2583, 28 Bankr.Ct.Dec. 1073,
Bankr. L. Rep. P 76,836
 In the Matter of ENVIRODYNE INDUSTRIES, INC., Debtor-Appellee.
Appeals of Seymour J. Ryckman, Illinois Department of
Financial Institutions, State of California, Jerry M.
Friedman, as custodian for Julie, Jennifer and Mark
Friedman, James Null, and David B. Bloom.
 Nos. 95-2733, 95-2734, 95-2735, and 95-2754.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 16, 1996.
Decided March 15, 1996.
 
 Appeals from the United States District Court for the Northern District of Illinois, Eastern Division, Nos. 95 C 1624, 95 C 1625, and 95 C 1723; Suzanne B. Conlon, Judge.
 
 
 1
 Ira Rubin, Robert Krenkowitz (argued), Goldman, Rubin & Shapiro, Dayton, OH, for Seymour J. Ryckman.
 
 
 2
 Rita M. Novak, Edward B. Glicken, Office of Atty. Gen., David I. Herbst, Allan S. Brilliant (argued), Nancy A. Peterman, Holleb & Coff, Chicago, IL, for Envirodyne Industries, Inc.
 
 
 3
 Edward B. Glicken, Robert Krenkowitz (argued), Office of Atty. Gen., Chicago, IL, for Illinois Dept. of Financial Institutions.
 
 
 4
 Bruce L. Wald, Tishler & Wald, Chicago, IL, Daniel E. Lugren, Yeoryios C. Apallas, Office of California Atty. Gen., San Francisco, CA, Robert P. Krenkowitz (argued), Robbinsville, NJ, David J. Epstein, Boston, MA, for State of Cal., Jerry M. Friedman, James Null.
 
 
 5
 Jeffrey B. Rose, A.E. Briseno, Tishler & Wald, Chicago, IL, for David B. Bloom.
 
 
 6
 Before CUMMINGS, RIPPLE and EVANS, Circuit Judges.
 
 
 7
 CUMMINGS, Circuit Judge.
 
 
 8
 Defendants in this case failed to tender shares of stock in a corporation entering a shortform merger under Delaware law. Their equity interest was thus converted into debt and they retained the right to redeem their canceled shares for a specified amount without interest. They failed to do so, however, before the newly formed corporation filed for Chapter 11 bankruptcy, and Defendants now complain that the Bankruptcy Court improperly subordinated their claims to those of other general unsecured creditors. We affirm the decision to subordinate Defendants' claims under 11 U.S.C. § 510(c).
 
 
 9
 In 1989, organizers formed Emerald Acquisition Corporation ("Emerald") and Emerald Sub One, Inc. ("Emerald Sub"), a wholly owned subsidiary of Emerald, for the purpose of acquiring Envirodyne Industries, Inc. ("Former Envirodyne"). Emerald Sub was organized specifically to purchase the outstanding shares of common stock of Former Envirodyne. These entities entered into a merger agreement whereby Emerald Sub purchased tendered shares of Former Envirodyne at $40 per share. Emerald Sub purchased 13,104,980 shares tendered and not withdrawn out of approximately 18,382,324 shares issued and outstanding. On June 1, 1989, Emerald Sub and Former Envirodyne were merged under Delaware General Corporation Law, section 253, with current Envirodyne as the surviving entity.
 
 
 10
 Shareholders had a right to redeem their stock at $40 per share or dissent from the merger and obtain an appraisal under Delaware law. As of the effective date of the merger, however, Former Envirodyne's stock was canceled, and non-tendering shareholders ceased to be equity holders and instead became creditors of current Envirodyne. In essence, non-tendering shareholders were "cashed-out." The merger agreement provided that these cashed-out shareholders were entitled to receive $40 per share of Former Envirodyne stock upon demand, but without interest. Each of the Defendants before this Court is a non-tendering stockholder of Former Envirodyne or a representative or successor in interest thereof. It is unclear from the record why Defendants failed to redeem their non-interest-bearing shares of Former Envirodyne for over three years after the merger.
 
 
 11
 On January 7, 1993, Envirodyne filed voluntary petitions for Chapter 11 bankruptcy. Its balance sheet reflected liabilities of $2,175,520 due to non-tendering, cashed-out shareholders of Former Envirodyne. Under the reorganization plan, general unsecured creditors received 32.28 shares of common stock in reorganized Envirodyne for each $500 of allowed claims (which was estimated to be approximately two-thirds of the allowed amount of their claims), and Envirodyne agreed to seek to subordinate the claims of non-tendering shareholders of Former Envirodyne. Pursuant to the plan and on September 23, 1993, Envirodyne commenced an adversary proceeding in Bankruptcy Court seeking equitable subordination of the nontendering shareholders' claims to those of other general unsecured creditors. Subordination was granted by the Bankruptcy Court on cross-motions for summary judgment, In re Envirodyne Indus., Inc., 176 B.R. 825 (Bankr.N.D.Ill.1995), and the district court later affirmed. Thereafter, Envirodyne's stock declined in value and, as a result, the general unsecured creditors received distributions amounting only to about one-third of the allowed amount of their claims; the Defendants received no distribution.
 
 
 12
 The sole issue on appeal is whether the Bankruptcy Court properly subordinated Defendants' claims to those of other general unsecured creditors under Section 510(c) of the Bankruptcy Code, 11 U.S.C. § 510(c), without requiring proof of wrongful conduct on the part of Defendants. The Bankruptcy Code provides as follows:
 
 
 13
 Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may-
 
 
 14
 (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
 
 
 15
 (2) order that any lien securing such a subordinated claim be transferred to the estate.
 
 
 16
 11 U.S.C. § 510(c). Exactly what "principles of equitable subordination" Congress had in mind is not clear from the Bankruptcy Code, but we have previously held based on the legislative history that Congress intended courts to develop the appropriate principles, which might be broader than the principles existing prior to Section 510(c)'s enactment. In re Virtual Network Servs. Corp., 902 F.2d 1246, 1249-1250 (7th Cir.1990); Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1356 (7th Cir.1990). Defendants' primary contention is that, at a minimum, equitable subordination requires inequitable conduct on the part of the creditor. But Virtual Network has disposed of that issue as well:
 
 
 17
 In sum, we conclude that § 510(c)(1) authorizes courts to equitably subordinate claims to other claims on a case-by-case basis without requiring in every instance inequitable conduct on the part of the creditor claiming parity among other unsecured general creditors.
 
 
 18
 902 F.2d at 1250; see also In re Vitreous Steel Prods. Co., 911 F.2d 1223, 1237 (7th Cir.1990) (the Section 510(c) inquiry is to be made on a case-by-case basis focusing on fairness to other creditors). Accord In re CF & I Fabricators of Utah, Inc., 53 F.3d 1155 (10th Cir.1995), certiorari granted, --- U.S. ----, 116 S.Ct. 558, 133 L.Ed.2d 458 (1995); In re First Truck Lines, Inc., 48 F.3d 210 (6th Cir.1995), certiorari granted, --- U.S. ----, 116 S.Ct. 558, 133 L.Ed.2d 458 (1995); Burden v. United States, 917 F.2d 115 (3d Cir.1990); Schultz Broadway Inn v. United States, 912 F.2d 230 (8th Cir.1990).
 
 
 19
 Defendants argue that Virtual Network carved out only a limited no-fault subordination rule for non-pecuniary loss claims, such as tax penalties and punitive damage awards. We find no language in the opinion limiting our review of congressional intent to non-pecuniary loss claims. Rather, we concluded in Virtual Network that Congress intended to give courts authority for developing principles of equitable subordination--principles that may or may not include a requirement of inequitable conduct. We ultimately held that inequitable conduct is not required for subordination of non-pecuniary loss tax penalty claims, but that limited holding takes nothing away from our general interpretation of Section 510(c). The flexible approach of Virtual Network makes sense in light of the Bankruptcy Code's primary goal of equality of distribution and the fluid concept of equity at the heart of Section 510(c) subordination.
 
 
 20
 In support of their argument, Defendants also rely on In re Mansfield Tire & Rubber Co., 942 F.2d 1055 (6th Cir.1991), certiorari denied, 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412, which found that Virtual Network was inapplicable to an excise tax payable to the government under 26 U.S.C. § 4971. The Sixth Circuit there stated that "whatever persuasive value [Virtual Network and its progeny] may have had for a case concerning nonpecuniary loss penalties, they are inapposite here." Id. at 1061 (emphasis in original). But Mansfield was premised on the fact that Section 507 of the Bankruptcy Code establishes the priority of an "excise tax," 11 U.S.C. § 507(a)(7)(E), precluding such taxes from being otherwise "susceptible to subordination" within the meaning of Section 510(c). 942 F.2d at 1062. As such, Mansfield does not support Defendants' argument that Virtual Network carved out a limited no-fault exception. In fact, the Sixth Circuit has since confirmed our understanding of Mansfield, see First Truck Lines, 48 F.3d at 213, and further stated that Section 510(c) allows for nofault equitable subordination under developing principles in the courts. Id. at 218.
 
 
 21
 We thus adopt the flexible approach of Virtual Network in which a court must look to the origin and nature of the unsecured claim and decide whether equity requires that it be subordinated to claims of other general unsecured creditors. In this regard, Defendants make their alternative argument: that the nature of their unsecured claims is such that the Bankruptcy Court should not have exercised its power (which we hold above that it has) to subordinate Defendants' claims to those of other unsecured creditors absent inequitable conduct. They analogize to cases dealing with debt arising from an asset purchase of an existing company by the debtor in which courts have required inequitable conduct for subordination. See, e.g., In re EDC, Inc., 930 F.2d 1275 (7th Cir.1991). But the asset purchase cases are easily distinguished, both because the debtor in such cases receives assets in exchange for incurring debt, unlike Defendants here, and because they involve subordination of secured claims to unsecured claims.
 
 
 22
 More persuasive are cases involving the claims of former shareholders in stock redemptions. In such cases, courts generally use equitable subordination to subordinate the claims of former shareholders who redeemed their stock to the issuing corporation in exchange for debt. See, e.g., Robinson v. Wangemann, 75 F.2d 756 (5th Cir.1935). The former shareholders, considered creditors rather than equity holders, are in form equivalent to other general unsecured creditors. Nonetheless, courts look to the substance of the transaction. Because the stock redemption is a transaction by which a corporation acquires its own stock from stockholders, it is simply a method of distributing a proportion of the assets to stockholders. See id. at 757. In substance, the former stockholders become equity holders rather than creditors on par with the corporation's other creditors. Thus subordination of claims in bankruptcy is equitable: "The assets of a corporation are the common pledge of its creditors, and stockholders are not entitled to receive any part of them unless creditors are paid in full." Id.
 
 
 23
 Defendants are legally creditors of Envirodyne, no doubt, just as the former shareholders in Robinson were legally creditors of the corporation to which they redeemed their stock. But Defendants' claims are, in substance, based on equity interests. When they invested in Former Envirodyne, they positioned themselves to benefit if the company performed well, but they also accepted the risk that the company might perform poorly. Thus Defendants accepted risks and benefits that Former Envirodyne's unsecured creditors did not, and as such their equity interests were legally subordinate to possible claims of unsecured creditors. Their current status as creditors arose from their failure to tender shares in the Emerald Sub short-form merger under Delaware law, as well as their failure to redeem their non-interest-bearing shares of Former Envirodyne in the three years subsequent to the merger. No amount of maneuvering can obscure the true nature of Defendants' interest. We further agree with the district judge's analysis that subordination is even more compelling here than in a stock redemption case. In a stock redemption, the shareholders make a conscious decision to relinquish their equity for debt. In this case, however, Defendants became creditors because they failed to redeem their shares, and their dilatory behavior is inexplicable given that they merely held non-interest-bearing canceled shares of Former Envirodyne. Thus their claims in bankruptcy are far weaker than other general unsecured creditors.
 
 
 24
 Defendants' proffered distinction of the stock redemption cases places form over substance and is thus contrary to the very rationale of those cases. Defendants argue that any risk or benefit they accepted as shareholders of Former Envirodyne came to an end after the merger, taking away any equity interest they had; left only with debt of the company, they assumed no more risk after the merger than any other unsecured creditor. We are not persuaded. Defendants' argument ignores the crux of the stock redemption cases: that the proper focus is on the nature and origin of the claim. Their claims indisputably arose out of an equity interest in Former Envirodyne, and the essential nature of the claims did not change after the merger. As in a stock redemption, where the stockholder accepting debt as payment for the stock assumes the risk of future insolvency, Defendants assumed the risk of Envirodyne's insolvency when they failed to tender their shares during the merger or anytime thereafter. Though in both cases the claims are legally those of creditors, they are in origin and nature claims based on equity interests. Nothing in the denomination "creditor" exempts a claimant from Section 510(c) equitable subordination.
 
 
 25
 Further, the fact that Delaware law converted Defendants' surviving interest into debt rather than equity does not change our analysis. The form of the transaction does not alter the origin and nature of Defendants' claims as essentially equity interests. We find no precedent for the proposition that where state law deems a claimant a creditor, a Bankruptcy Court may not subordinate his claims to those of other unsecured creditors under Section 510(c). That provision gives Bankruptcy Courts broad power to subordinate claims based on "principles of equitable subordination." Such power naturally affords discretion to consider the substance of unsecured claims in order to implement the primary bankruptcy goal of achieving a fair distribution of the estate among all creditors. In this case, Delaware law affected the form of Defendants' claims, not their substance. In any event, we do not see a conflict between federal and state law in this case: state law determined the validity of the claims and federal bankruptcy law determined their priority among other valid claims.
 
 
 26
 Finally, Defendants argue that even if inequitable conduct is not a prerequisite to subordination, harm to the other unsecured creditors absent subordination is. We need not reach the legal question involved because we reject Defendants' premise--that the bankruptcy result for the other unsecured creditors is the same regardless of whether the court subordinates Defendants' claims. They correctly note that all of Envirodyne's general unsecured creditors received 32.28 shares of common stock in reorganized Envirodyne, an amount which will not change regardless of the subordination issue. However, Defendants ignore the fact that any distribution to them will affect the value of the shares and therefore the distribution to the other creditors. The effect on other unsecured creditors might be even more substantial in light of the unexpected decline in Envirodyne's stock since confirmation of the reorganization plan.
 
 
 27
 In conclusion, we hold that Section 510(c) of the Bankruptcy Code authorizes courts to subordinate the unsecured claims of non-tendering, cashed-out shareholders of a short-form merger under Delaware law to those of other general unsecured creditors, and we further hold that equitable subordination was appropriate on the facts of this case. We also deny Envirodyne's petition to strike portions of Defendants' reply brief to this Court.
 
 
 28
 AFFIRMED.