**In the Matter of Daniel L. FREELAND, Trustee, Plaintiff–Appellant,**

v.

**INTERNAL REVENUE SERVICE, Defendant–Appellee.**

No. CIV. 4:01CV0023AS.

United States District Court, N.D. Indiana, Hammond Division at Lafayette.

July 12, 2001.

Sheila Anne Ramacci, Daniel L. Freeland & Associates, PC, Highland, IN, for plaintiff.

Jennifer Cohen-Gazaille, U.S. Department of Justice, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Judge.

This matter comes before the court on appeal from the United States Bankruptcy Court for the Northern District of Indiana, No. 00–4013.[1] The Appellant to this action, Daniel L. Freeland (hereinafter "Trustee"), asserts that the bankruptcy court erred in refusing to allow the amendment of his adversary complaint to assert a constructive trust theory in an effort to equitably subordinate the Appellee's, Internal Revenue Service (hereinafter "Government"), claim to certain funds owed by the debtor, White Trailer Corporation, f/k/a ("Monon"), pursuant to 26 U.S.C. § 4051. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 158(a). For the reasons given below the bankruptcy court's decision is **AFFIRMED.**

### I. BACKGROUND

This dispute arises over the failure of Monon to properly transfer to the Government certain excise taxes collected in conjunction with the sale of its semi-tractor trailers. The internal revenue code, pursuant to 26 U.S.C. § 4051, imposes a twelve percent excise tax upon the first retail sale of various truck chassis and

---

1. The Honorable Robert E. Grant, United States Bankruptcy Judge for the Northern District of Indiana.

bodies. The tax is then collected by the retailer. The retailer is then required to transfer the revenues collected to the Internal Revenue Service on a semimonthly basis. *United States v. Howle*, 166 F.3d 1166 (11th Cir.1999). This tax applied to the semi-tractor trailers produced by Monon. It was Monon's practice to add the 12% excise tax to the purchase price of the semi-tractor trailer. The Trustee further notes that Monon specifically separated the tax amount from the purchase price amount on the invoice.

Prior to the filing of its petition, Monon entered into a financing arrangement with Congress Financial. Pursuant to that agreement, all the proceeds from the sale of the semi-tractor trailers would be remitted to a lock box. Accordingly, the collections were to be applied to Monon's outstanding loan balance, which in turn increased the available credit. (Trustee's Compl. at ¶ 14–18). The Trustee contends that Congress Financial failed to forward any of the amounts collected from the sale proceeds to the Government for payment of the excise taxes.

The loan agreement is silent as to which party had the duty to forward the tax portion of the proceeds to the Government. Consequently neither party forwarded the excise tax proceeds to the Government. The Trustee contends that Monon was working on budgets approved by Congress Financial that did not provide for the payment of the excise taxes. However, this does little to help either side in determining whose burden it was to pay the taxes. Rather it is indicative of the fact that both parties failed to properly address the issue. Subsequently, Monon filed for bankruptcy and the Government filed its claim for approximately 2.2 million dollars against the Estate. It is the Trustee's position that the Government must first make an attempt to collect the funds from Congress Financial before seeking payment from the Estate.

## II. STANDARD OF REVIEW

■ Under the applicable standard of review, the bankruptcy court's finding of facts are reviewed under a "clearly erroneous standard" and the conclusions of law are reviewed under a de novo standard. *In re Robert N. Jones and Margaret N. Jones* 226 F.3d 917 (7th Cir.2000); *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 835 (7th Cir.1998); see also Fed. R. Bankr.P. 8013.

## III. DISCUSSION

■ The Trustee asserts that the bankruptcy court erred in failing to allow it to amend the complaint in order to allege facts consistent with an actionable legal claim. The court reviews the bankruptcy court's refusal to allow such an amendment under an abuse of discretion standard. *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 475 (7th Cir.1997). *A. Kush & Assoc., Ltd. v. American States Ins. Co.*, 927 F.2d 929, 935 (7th Cir.1991).

In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Court determined that leave to amend should be granted under Federal Rule of Civil Procedure 15(a) unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] *futility of amendment.*" (Emphasis added), See also *Perrian v. O'Grady*, 958 F.2d 192, 193 (7th Cir.1992) (quoting *Foman* standard). Therefore, the court will evaluate the determination of the bankruptcy court for compliance with the *Foman* directive.

 An amended complaint that would clearly not prevail or improve the position of the Trustee will be rejected. *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. 227; See Also *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir.1999). The proposed amendment must survive the strictures of a motion to dismiss. *Rose v. Hartford Underwriters Insurance Co.*, 203 F.3d 417, 420 (6th Cir. 2000); *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir.1996) ("[D]istrict courts need not accommodate futile amendments."). Here the bankruptcy court determined that amendment of the complaint would be futile because the Trustee could not allege any set of facts upon which equitable subordination could be granted.

## A. EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(c)

The groundbreaking case dealing with equitable subordination is *In re Mobile Steel*, 563 F.2d 692 (5th Cir.1977). In that case, the Fifth Circuit held that a creditor's claim could be equitably subordinated only if the following conditions were met: 1) The claimant had engaged in some kind of inequitable conduct; 2) the misconduct had resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and 3) equitable subordination of the claim was not inconsistent with the provisions of the Bankruptcy Code. *Id.* at 700. For purposes of this opinion the court will assume that the Trustee can meet the second condition and will address the Trustee's claim that it can satisfy the first and third conditions as well if permitted leave to file an amended complaint.

### i. Inequitable Conduct Requirement

 Although the bankruptcy court did not address the first element required for equitable subordination in reaching its decision below, a discussion of this particular element is necessary in light of the particular facts alleged by the Trustee in the original complaint as well as those facts it must necessarily rely upon in order to properly state a claim for equitable subordination under § 510(c). Generally, equitable subordination may be invoked only where a creditor has been involved in some type of misconduct or inequitable conduct. *In re Lifschultz Fast Freight*, 132 F.3d 339, 343 (7th Cir.1997). Typically, this principle comes into play because of conduct involving the following: 1) fraud, illegality, breach of fiduciary duties; 2) undercapitalization; and 3) claimant's use of the debtor as a mere instrumentality or alter ego. *Id.* at 345. *Lifschultz Fast Freight*, delineated two exceptions to the requirement of inequitable conduct. However, as the Seventh Circuit correctly points out in that case, the birth of these very limited exceptions do not spell the death of the requirement that in most instances a creditor's misconduct is necessary before equitable subordination can occur. *In re Lifschultz Fast Freight*, 132 F.3d at 348.

The court now turns to the two exceptions that the Seventh Circuit has deemed to not require creditor misconduct. *In re Virtual Network*, 902 F.2d 1246, 1250 (7th Cir.1990), the Seventh Circuit created a narrow exception to the rule of creditor misconduct in cases involving the Government's delayed attempt to collect a tax penalty. However, that specific legal finding becomes questionable in light of *United States v. Noland*, 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996)(discussed *infra*). In fact that Seventh Circuit in a footnote stated as much, "In *Noland*, the Supreme Court suggests that the sponsors of the Bankruptcy Code incorrectly characterized the existing law with respect to subordination of penalties."

*In re Lifschultz Fast Freight,* 132 F.3d at 348 n. 9.

Notwithstanding the argument concerning no-fault equitable subordination with respect to tax penalties, the facts presented here are clearly distinguishable from *Virtual Network* for the proposition that inequitable conduct is not required on the part of the Government. First, the claim being sought is an excise tax and not a penalty, therefore the Government constitutes a primary creditor and is entitled to priority over the other unsecured creditors. See 11 U.S.C. § 507(a)(7)(E); See Also *In re Mansfield Tire & Rubber Co.,* 942 F.2d 1055, 1061 (6th Cir.1991), *certiorari denied,* 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412. Secondly, there has been no allegation that the Government has delayed in asserting its claim for the unpaid taxes. In *Virtual Network,* the Seventh Circuit agreed that the late-filing of the tax penalty claim was a consideration in deciding to equitably subordinate that claim as to the remaining unsecured creditors. 902 F.2d at 1250. Therefore, the limited exception in *Virtual Network* to the creditor misconduct requirement has no applicability to the facts presented in this case.

The Seventh Circuit carved out another exception to the creditor misconduct requirement with its opinion in *In re Envirodyne Industries, Inc.,* 79 F.3d 579 (7th Cir.1996). In that case the creditors were also equity holders of the debtor, an important distinction. *Id.* at 582. "The shareholders claims, although formally debt, were in substance based on equity interests in the target corporation." *In re Lifschultz Fast Freight,* 132 F.3d at 349 citing *In re Envirodyne Industries, Inc.,* 79 F.3d at 583. The creditors claims arose out of the fact that their equity interests were converted into unsecured debt through a merger. *Id.* The creditor in-

volved in this case, the United States Government, does not sit in a similar inside position to Monon's bankruptcy estate as the creditors involved in *Envirodyne.* Therefore, this exception has no applicability to the facts here.

■ In gleaning the principles from *Virtual Network, Envirodyne* and *Lifschultz Fast Freight* this court finds that creditor misconduct is still a necessary prerequisite for equitable subordination in viewing the Government's relationship with Monon as a primary creditor. Furthermore, the Sixth Circuit in construing the legislative history of § 510(c) found that inequitable conduct was necessary to subordinate an excise tax claim as opposed to a penalty claim. *United States v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.),* 942 F.2d 1055, 1062 (6th Cir.1991), *cert. denied,* 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992); (See 124 Cong.Rec. H11089 (Sept. 28, 1978) (statement by Rep. Edwards), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6452; 124 Cong.Rec. S17406 (Oct. 6, 1978) (statement by Sen. DeConcini), reprinted in 1978 U.S.Code Cong. & Admin.News 6505, 6521.) Although the Supreme Court later determined that particular tax to constitute a penalty, *United States v. Reorganized CF & I Fabricators, Inc.,* 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996)(discussed *infra* ), the premise that inequitable conduct is required to subordinate an excise tax remains good law. *Id.* at 1062.

Here the Trustee has failed to demonstrate how the Government has engaged in any form of inequitable conduct in this case. Rather, the Trustee contends that the Government has engaged in misconduct by failing to first seek the funds from the much maligned bank, Congress Financial, before seeking payment from the debtor's estate. However, at least one

court has addressed this argument and found it to be frivolous. See *infra, In re Dakota Industries, Inc.,* 131 B.R. 437, 446 (Bankr.D.S.D.1991). Moreover, the fact that the Trustee contends that there is a *res* available for the Government to seek does nothing to further its position. As discussed in part C, any claim that the Trustee asserts involving a constructive trust theory must include Congress Financial as an indispensable party.

The more likely candidate for creditor misconduct in this case is Congress Financial. The Trustee repeats over and over that Congress Financial is being unjustly enriched, which raises a red flag as to why the Trustee does not simply pursue Congress Financial directly. The record before the Court does not fully explain this point, however the logical answer is that these parties have either agreed to settle any and all claims between them and therefore the Trustee is barred from seeking these funds directly from Congress Financial or the Trustee has determined under the applicable financial agreement between Monon and Congress Financial that the lender owed no duty to forward the amount to the Government.

The Seventh Circuit has found that lenders generally owe no fiduciary obligation to the debtor. *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1356 (7th Cir.1990). Furthermore, equitable subordination is inapplicable to a nonmanagement creditor absent a showing of inequitable conduct. *Kham & Nate's Shoes,* 908 F.2d at 1356. In *Kham & Nate's Shoes,* the Seventh Circuit emphasized that a lender was free to exercise the rights and privileges accorded the lender under its agreement with a borrower. *supra,* 908 F.2d at 1356–57; See Also *In re EDC, Inc.,* 930 F.2d 1275, 1281–82 (7th Cir.1991). Here the trustee has failed to allege at any point

during the bankruptcy proceedings or in its submissions to this court that Congress Financial has failed to comply with any of the contractual requirements of the financing arrangements with Monon. Absent some contractual obligation to do so, Congress Financial is not required to pay the excise tax that is imposed upon Monon the producer and seller of the semi-tractor trailers. See Treas. Reg. § 145.4052–1 ("the manufacturer, producer, or importer shall be liable for the tax. .").

*ii. The use of equitable subordination must be consistent with the Bankruptcy Code*

Furthermore, the issue of whether creditor misconduct is necessary in order to proceed with a claim for equitable subordination has become even more questionable in light of *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) and *United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996). The principles espoused in *Noland* dictate that equitable subordination is not to be used to make decisions about the treatment of categories of claims in bankruptcy proceedings. 517 U.S. at 541, 116 S.Ct. 1524. In *Noland* the Supreme Court held:

that the subordination fell beyond the scope of the court's authority under the doctrine of equitable subordination, because categorical subordination at the same level of generality assumed by Congress in establishing relative priorities among creditors was tantamount to a legislative act and therefore was outside the scope of any leeway under § 510(c) for judicial development of the equitable subordination doctrine. *Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. at 229[, 116 S.Ct. 2106],

citing *Noland,* 517 U.S. at 543[, 116 S.Ct. 1524].

Similarly, the Trustee attempts to argue that in cases where a creditor, in this instance the Government, can pursue its priority claim against another party equitable subordination is a proper method for reestablishing the relative priorities among the various creditors. This position is inconsistent with the holdings of both *Noland* and *Reorganized CF & I Fabricators of Utah.*

■ Therefore, *assuming arguendo* that the Trustee could satisfy the first requirement espoused in *Mobile Steel,* the Trustee can not meet the third requirement if allowed to file an amended complaint for equitable subordination. *Mobile Steel* requires that equitable subordination of a claim must not be inconsistent with the provision of the Bankruptcy Code. The bankruptcy court relying on *Noland* found that "Congress has already considered how to deal with claims on which an entity other than a debtor is also liable and its solution does not contemplate subordinating the primary creditor's claim." (Bankr. Ct. Decision at p. 5). The Bankruptcy Code cited provision 11 U.S.C. § 502(e) to analogize how the Trustee's position was inconsistent with the Code.

The bankruptcy court used this proposition to illustrate the concepts dealing with claims of contribution and reimbursement that the Trustee can utilize against Congress Financial to prevent the type of unjust enrichment that allegedly has occurred. For Example, *In re Erlin Manor Nursing Home, Inc.,* 36 B.R. 672 (Bankr. D.Mass.1984) the bankruptcy court found that a debtor had the right to seek reimbursement for alleged overpayments to a creditor involving a property interest of the estate, particularly where the creditor's refusal to reimburse the debtor "interfered with the object of reorganization."

*Erlin,* 36 B.R. at 676–77. See also *In re Southern of Rocky Mount, Inc.,* 36 B.R. 175 (Bankr.E.D.N.C.1983) (action by debtor to recover fire insurance proceeds in petition of debtor at time of filing of the chapter 11 possession but in the hands of a creditor at the date of the lawsuit was one involving property of the debtor's estate). The Bankruptcy Code provides these types of remedies for situations presented by the facts of this case. Therefore, an application of equitable subordination to the Government's priority claims would run counter to the principles and requirements of the code. Any other result would amount to this court making a policy decision which would allow a bankruptcy estate to subordinate a primary creditor's claim simply because the trustee alleges that another source remains viable for collection. Here the Government has a valid claim for unpaid taxes against the bankruptcy estate of Monon. Any claim for who should have paid those taxes and if one party has been unjustly enriched against the other must be settled between the Trustee and Congress Financial using well established claims for reimbursement or contribution.

## B. CLAIM OF RIGHT DOCTRINE

■ The claim of right doctrine does not alter Monon's prior obligation which now falls upon the Trustee to remit the unpaid excise taxes to the Government. Under that doctrine, a taxpayer who receives income "under a claim of right and without restriction as to its disposition" must include the amount in his gross income for the year in which it was received, even though it is later determined that the taxpayer must repay the amount. *United States v. Skelly Oil Co.,* 394 U.S. 678, 680, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969) (citing *North Am. Oil Consol. v. Burnet,* 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197

(1932)). Here there the question is who is responsible for the payment of the 12 percent excise tax from the sale of the product, not whether those funds are subject to income taxation. The Trustee implies that because it was not taxed on the funds it in turn had no duty to act as custodian of the funds until they were properly forwarded to the Government. However, this assertion is wrong. See *Illinois Power Co. v. Commissioner*, 792 F.2d 683, 689 (7th Cir. 1986); see also *United States v. Lewis*, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951); *North Am. Oil Consol. v. Burnet*, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197 (1932). It bears repeating that under the applicable tax regulations that burden falls on the manufacturer, Monon to act as custodian of the collected excise tax and forward them on to the Government. See, *supra*, Treas. Reg. § 145.4052–1. This obligation was not altered contractually by the financial arrangement between Monon and Congress Financial.

## C. CONSTRUCTIVE TRUST

The Trustee contends that if it were allowed to amend its complaint it could successfully assert a constructive trust cause of action. A constructive trust is not a cause of action rather it is a remedy that may be invoked when one party has been unjustly enriched at the expense of another. *Estates of Kalwitz v. Kalwitz*, 717 N.E.2d 904, 912 (Ind.App. 1999). See *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 16 F.Supp.2d 941, 952 (N.D.Ill.1998) (Defendants correctly argue that constructive trust is a remedy, and not a claim, and therefore cannot stand as a separate cause of action.); see also *Egert v. FT Mortgage Companies*, 1999 WL 528517, at *3 (N.D.Ill. Jul. 19, 1999). A constructive trust is a judicially created remedy "devised to do justice by making equitable remedies available against one whom through fraud or other wrongful

means acquires property of another." *Id.* at 912. Here it is uncertain as to what specific cause of action the Trustee can assert against the Government individually in which a constructive trust may be utilized.

Moreover, a party invoking an equitable remedy such as a constructive trust is required to name all indispensable parties to that action. *Niles–Bement–Pond Co. v. Iron Moulders' Union*, 254 U.S. 77, 81, 41 S.Ct. 39, 65 L.Ed. 145 (1920). In *Niles–Bement*, the Supreme Court was called upon to determine in an equity action whether a separate corporation was an indispensable party to that action. *Id.* The Court found based on prior precedent involving equity actions that an indispensable party is a "Person who not only has an interest in the controversy, but an interest of such a nature that a final decision cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* at 80–83, 41 S.Ct. 39. Accord *Rockwood Insurance Co. v. Pennsylvania Automobile Insurance Plan*, 50 Pa.Cmwlth. 194, 412 A.2d 669 (1980). (In equity actions, party is indispensable when his interest in proceeding is of such nature that final decree cannot be made therein without affecting his interest or leaving controversy in such condition that final determination may be wholly inconsistent with equity and good conscience.) *Haynie v. Milan Exchange, Inc.*, 62 Tenn.App. 36, 458 S.W.2d 23, 29 (1970). (same)

A closely analogous situation to the facts in this case was presented in *In re Dakota Industries, Inc.*, 131 B.R. 437, 446 (Bankr. D.S.D.1991). The chapter 11 debtor argued that the IRS held legal title to certain trust funds deposited with the bank

for the benefit of the IRS and that the IRS should shoulder the responsibility of suing to recover those funds. *Id.* Not only did the bankruptcy court find this argument frivolous but it also questioned what was the Bank's interest and responsibility with respect to the alleged funds. *Id.* The bankruptcy court determined the bank had a clear interest in the account since its alleged wrongful action caused the funds that were alleged to be set aside for payment of the taxes not to be tendered to the IRS. *Id.* Therefore, the bankruptcy court did not reach any decision on whether the funds should have been properly forwarded to the IRS by the bank for failure of adding it as an indispensable party under Federal Rule of Civil Procedure 19(a). *Id.*

In order to comply with the requirements espoused in *Niles–Bement* and *In re Dakota Industries, Inc.* any remedy sought by the Trustee using a constructive trust theory must include Congress Financial. No where amongst the submissions of the Trustee is it asserting that it will amend its complaint to include Congress Financial as a party to the equity action. Monon chose to enter into an arms length financial arrangement with Congress Financial, whereby it would remit the entire proceeds from the sale of the semi-tractor trailer. The Trustee asserts in its brief that Congress Financial is holding the funds in trust for the IRS and that "Congress Financial" is the party being unjustly enriched not the Government. (See Appellant's Brief at p. 7–8). It is evident that Congress Financial would have a much different perspective as to the proper allocation and use of the funds. Quite probably, Congress Financial would argue that the taxes should have been paid from the extension of credit under the financial arrangement. Thus, any action in equity would require that Congress Financial be made a party to that action. The lack of Congress Financial's presence makes any future amendment futile.

## IV. CONCLUSION

For the foregoing reasons the Court now **AFFIRMS** the decision of the Bankruptcy Court. Each party to bear its own costs. **IT IS SO ORDERED.**