In re S.M. ACQUISITIONS CO., d/b/a Stylemaster, Inc., Debtor.

American National Bank and Trust Company of Chicago, Plaintiff,

v.

Matrix IV, Inc., Defendant.

Bankruptcy No. 02 B 10723.
Adversary No. 02 A 00283.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 31, 2005.

Michael L. Gesas, August A. Pilati, Gesas, Pilati, Gesas & Golin, Ltd., Chicago, IL, for debtor.

Ira Bodenstein, Office of the U.S. Trustee, Chicago, IL, for trustee.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EIGHTH AFFIRMATIVE DEFENSE (EQUITABLE SUBORDINATION DEFENSE)

JACK B. SCHMETTERER,
Bankruptcy Judge.

This Adversary proceeding relates to the case filed by Debtor S.M. Acquisition Co. d/b/a Stylemaster, Inc. ("Debtor") under Chapter 11 of the Bankruptcy Code.

### BACKGROUND

Plaintiff, American National Bank, (the "Bank"), filed this Adversary against Defendant, Matrix IV, Inc. ("Matrix"), in a lien priority dispute arising from credit each extended to Debtor prior to its Chapter 11 Bankruptcy filing. The Bank obtained its lien through a loan and Matrix claims a lien through its work on certain molds owned by Debtor. The Bank protected its lien through recordings; Matrix did not. Therefore, it was earlier determined herein that the Bank's lien primed any lien owned by Matrix.

Following its pleading of an equitable subordination defense ("Eighth Defense") seeking to subordinate the Bank's lien, Matrix was ordered to file a detailed More Definite Statement of Facts ("Statement") showing its evidence supporting that defense pursuant to Rule 12(e) Fed.R.Civ.P. [Rule 7012 Fed.R.Bankr.P]. That was filed in a 22-page pleading. In that Statement, Matrix set forth many detailed evidentiary facts that it asserted were sufficient to warrant equitable subordination. The Bank then moved to strike the Eighth Defense. After briefing and argument, it was announced in open court on December 20, 2002, that the motion striking the Eighth Defense would be granted upon completion of an opinion. Several years have since passed, but Matrix did not amend its Eighth Defense or Statement. Therefore, it must be concluded that those pleadings set forth all the evidence that Matrix could present in support of that defense. As discussed below, the proposed evidence is not legally sufficient, the Eighth Defense and Statement read together fail to set forth any ground on which subordination relief can be granted, and Matrix is unable in the light of uncontested facts concerning the loan to plead or prove evidence supporting its defense.

During the intervening years, the remaining issues were tried here and the Court's separate Judgment that resulted was issued pursuant to Findings of Fact and Conclusions of Law *In re S.M. Acquisition Co.*, 296 B.R. 452 (Bankr.N.D.Ill. 2003); later supplemented *In re S.M. Acquisition Co.*, 319 B.R. 553 (Bankr.N.D. Ill.2005). However, an opinion and order thereon striking the Eighth Defense has not yet been entered.

Following appeal and entry of two opinions by the District Court and affirmation of the earlier rulings and judgment on appeal, the case was remanded for entry of an Order on the Motion to Dismiss the Eighth Defense and Opinion setting forth reasons. *Matrix IV, Inc. v. American Nat'l Bank (In re S.M. Acquisition)*, No.

03 CV 7072, 2004 WL 1151575 (N.D.Ill. Apr.29, 2004); *Matrix IV, Inc. v. American Nat'l Bank (In re S.M. Acquisition)*, No. 03 CV 7072 (N.D.Ill. Sept. 12, 2005).

Pursuant to the instant Opinion, Matrix's Eighth Affirmative Defense and supporting More Definite Statement are stricken and dismissed by separate order with prejudice.

## DISCUSSION

### Standard for Motion to Strike

Motions to strike a complaint pursuant to Fed.R.Civ.P. 12(f) [adopted in bankruptcy by Rule 7012 Fed.R.Bankr.P.] are treated under the same standard as a motion to dismiss. *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 737 (N.D.Ill.1982). Pursuant to Rule 12(b)(6), under Circuit standards, a complaint may not be dismissed unless the plaintiff cannot present any set of facts that would entitle it to relief. *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir.1996). Rule 12(b)(6) must be read in conjunction with Rule 8(a). *McDonald v. Household Intern., Inc.*, 425 F.3d 424, 427–28 (7th Cir.2005). Rule 8(a) requires only "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). This is a notice pleading standard, not a fact pleading standard. *McDonald v. Household Intern., Inc.*, 425 F.3d 424, 427–28 (7th Cir.2005). Seventh Circuit panels have repeatedly held that pursuant to the notice pleading system, pleaders do not have an obligation to plead legal theories or detailed evidence. *Id.* (citing *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir.2003); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir.2000); *La Porte County Republican Cent. Comm. v. Bd. of*

*Comm'rs of County of La Porte*, 43 F.3d 1126, 1129 (7th Cir.1994)).

However, here in obedience to an order to plead the factual basis for its claim and following extensive discovery, Matrix pleaded a detailed 22–page More Definite Statement that was never since amended. Under this circumstance, Matrix thereby took its best shot at asserting all the facts and evidence that it contends support the Eighth Defense. The facts asserted must be presumed true, and then it must be determined whether there is any factual basis thereby pleaded upon which the defense of equitable subordination could be sustained. If there are no facts pleaded in this circumstance that would support the imposition of equitable subordination, then the Defense asserting it should be stricken. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Matrix's equitable subordination defense is grounded on two separate legal concepts. First, it contended that the Bank's loan should be recharacterized as equity. Second, § 510(c) of the Bankruptcy Code, title 11 U.S.C. is asserted as a basis. As shown by reference to the More Definite Statement, both contentions fail because Matrix has not and cannot establish evidence to prove either contention.

## I. MATRIX CANNOT RECHARACTERIZE THE BANK'S LOAN AS EQUITY

Although some courts often discuss the recharacterization of a loan as a basis for equitable subordination, Seventh Circuit precedent has acknowledged that a cause of action for recharacterization is distinct from equitable subordination. *In re Lifschultz Fast Freight*, 132 F.3d 339, 345 n. 3 (7th Cir.1997) (citing *In re Hyperion Enters.*, 158 B.R. 555, 560 (D.R.I.1993) ("[T]he issues of recharacterization of debt as equity capital and equitable subordina-

tion should be treated separately.")). A Sixth Circuit opinion has also recognized recharacterization of debt to equity as distinct from equitable subordination. *In re AutoStyle Plastics, Inc.*, 269 F.3d 726 (6th Cir.2001).

■ Recharacterization cases turn on whether a debt actually exists, not on whether the creditor's conduct warrants the subordination of its debt. *In re AutoStyle Plastics Inc.*, 269 F.3d 726, 748 (6th Cir.2001). Recharacterizing a debt as equity automatically subordinates it to the debt owed to other creditors, hence obviating the necessity for equitable subordination. Bankruptcy judges are empowered to recharacterize loans under their general equitable powers pursuant to Section 105 of the Bankruptcy Code. *In re AutoStyle Plastics Inc.*, 269 F.3d 726, 748 (6th Cir. 2001). The key to analysis of an assertion of debt recharacterization is whether the transaction has earmarks of a loan or an equity investment. *In re Mid–Town Produce Terminal, Inc.*, 599 F.2d 389, 393 (10th Cir.1979).

■ If a purported loan transaction resulted from an arm's length negotiation on terms that characterize an ordinary commercial loan, it will continue to be treated as a debt. *See, e.g., Frierdich v. C.I.R.*, 925 F.2d 180, 183 (7th Cir.1991) (citing *Roth Steel Tube Co. v. Commissioner of Internal Revenue*, 800 F.2d 625, 630 (6th Cir.1986)). In contrast, if the transaction is documented by loan documents that don't have a fixed maturity date or a schedule of payments at a fixed interest rate, it may not be treated as a loan. *In re Larson*, 862 F.2d 112, 117 (7th Cir. 1988). Moreover, if the expectation of repayment depends solely on the success of the borrower's business, then the transaction has the appearance of a capital contribution. *Roth Steel*, 800 F.2d at 631. "The absence of notes or other instruments of indebtedness is a strong indication that the advances were capital contributions and not loans." *Id.*

■ The Bank's loan involved in this case was structured as a revolving credit line to Debtor based on the value of 80% of the Debtor's receivables and 50% of its inventory. The agreement between those parties was documented in a Loan Agreement and Security Agreement dated November 3, 1997, and in a UCC statement filed November 6, 1997. Matrix cannot prove that the loan documents lack maturity date, interest rate, or terms making the loan contingent on business success. Following trial of other issues in this case, Findings Nos. 38 through 65 (296 B.R. 452) demonstrated a conventional lending relationship.

Matrix asserts that the loan was an equity infusion because: (1) Prior to the loan, two of the Bank's customers ("Bailes and DePaul") were able to buy a 49% interest in the Debtor for $200,000 and a loan of $550,000, which they agreed to subordinate to any "senior indebtedness"; (2) the sole shareholder of the Debtor ("Williams") had an agreement with Bailes and DePaul whereby she could repurchase the stock sold to them if they failed to secure working capital for the Debtor; (3) after the loan was secured, Williams was required to waive her right to repurchase the stock sold to Bailes and DePaul and released them from all obligations in connection with the stock purchase, including the obligation to provide an additional $250,000 loan to the Debtor; (4) the Debtor and owners of its stock, Bailes, DePaul, and Williams (the "owners") gave personal guarantees on the Bank loan; (5) the owners executed a common stock pledge of all of their stock in the Debtor to the Bank; (6) the Bank had the right to exercise its rights under the stock pledge upon default on the loan; and (7) there was an agree-

ment that the stock owners would not take any action that would "materially impair the Bank's collateral or be inconsistent with any provision of the other Loan Documents."

Taken as true for purposes of the Bank's motion to dismiss, nonetheless those asserted facts do not support a claim for recharacterization of the Bank's loan. They do not show that the loan was anything more than an ordinary commercial loan. Nothing in the detailed pleaded Statement or in the loan documents shows that the Bank became a joint venturer or equity participant with the Debtor or its owners. On the contrary, the allegations and documents only show that the Bank took ordinary precautions to protect itself from a drop in the business fortunes of the Debtor. Although it received a pledge of stock as collateral, the Bank did not execute on that pledge. Further, there are no facts asserted to show that Bailes or De-Paul were instrumentalities of the Bank or vice versa. The Bank's arm's length negotiation with the Debtor was in no way affected by the fact that Bailes and DePaul were able as individuals to purchase the Debtor's stock.

In sum, Matrix has failed to assert facts that show the Bank did more than merely make and protect an ordinary commercial loan. If the Bank is required to defend the good faith of its loan in this case, every routine credit transaction could be challenged by a disgruntled creditor through a trial on the merits with all of the attendant costs. The Bank had no duty to put the interests of the Debtor or its other creditors first, and was permitted to protect its lien claim. *Kham & Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1358 (7th Cir. 1990); *see also In re Heartland Chemicals, Inc.*, 136 B.R. 503, 518–518 (Bankr. C.D.Ill.1992) (finding equitable subordination inappropriate where creditor engaged

in arm's length negotiations with debtor represented by experienced counsel). The Matrix detailed allegations would not if proven support the recharacterization of the Bank's loan as equity, and Matrix cannot prove facts that might warrant recharacterization.

## II. *MATRIX'S EQUITABLE SUBORDINATION CLAIM IS NOT SUPPORTED UNDER SECTION 510(c)*

The Bankruptcy Code permits for equitable subordination of claims at Section 510(c) of the Bankruptcy Code:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

> (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(c).

 Cases subordinating claims of creditors that engaged in arm's length negotiations with the debtor are few and far between. *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1356 (7th Cir.1990) (citing *Benjamin v. Diamond*, 563 F.2d 692 (5th Cir.1977)). Equitable subordination allows a bankruptcy judge to subordinate all or part of a creditor's claim to those of other creditors if a creditor has engaged in misconduct, such that principles of equity would be offended if its claim were given parity with the other claims. *Koch Refining v. Farmers Union Central Exchange*, 831 F.2d 1339, 1350 (7th Cir.1987). The purpose of equitable subordination "is to undo or offset any inequity in the claim position of a

creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *In re Virtual Network Servs. Corp.*, 98 B.R. 343, 350 (N.D.Ill.1989), *aff'd*, 902 F.2d 1246 (7th Cir.1990) (citing *In re Kansas City Journal–Post Co.*, 144 F.2d 791, 800 (8th Cir. 1944)). Equitably subordinating a claim reduces or eliminates the amount that a creditor may recover by moving that creditor down in the order of payment from the bankruptcy estate. *In re Lifschultz Fast Freight*, 132 F.3d 339, 341 (7th Cir.1997).

Equitable subordination is an extraordinary remedy which should be used sparingly. The determination of whether to subordinate a particular claim is a factual inquiry that must be made on a case-by-case basis. *In re Lifschultz Fast Freight*, 132 F.3d 339, 348 n. 7 (7th Cir. 1997).

In the Seventh Circuit, the test from *Matter of Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir.1977) has been adopted to determine whether a claim should be equitably subordinated. *Lifschultz*, 132 F.3d at 344. Under *Mobile Steel*, a claim will be reprioritized by subordinating it to other claims where: (1) the claimant has engaged in some type of inequitable conduct; (2) The claimant's misconduct has resulted in some injury to creditors; and (3) the equitable subordination of the claim is consistent with the Bankruptcy Code. *Id.* The burden of proof as to the first element depends in part on whether the claimant sought to be subordinated was a fiduciary or insider. *In re N & D Properties, Inc.*, 799 F.2d 726, 731 (11th Cir.1986). Where that claimant is an insider or a fiduciary, some material evidence of unfair conduct must be presented. *Lifschultz*, 132 F.3d at 344, and if the insider is found to have breached a fiduciary trust the loan can be equitably subordinated. *Id.* If the claimant is not an insider, its claim may still be equitably subordinated but the claimant's conduct must be much more egregious. *See In re Aluminum Mills Corp.*, 132 B.R. 869, 896 (Bankr.N.D.Ill.1991).

Three categories of claims have generally been subordinated under the *Mobile Steel* test: "(1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors." *Matter of United States Abatement Corp.*, 39 F.3d 556, 561 (5th Cir.1994).

The United States Supreme Court has not yet passed on whether inequitable conduct is always a mandatory requirement before a claim can be equitably subordinated in bankruptcy. *United States v. Noland*, 517 U.S. 535, 543, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). Under the Seventh Circuit analysis in *Lifschultz*, 132 F.3d at 349, inequitable conduct is usually required before a claim will be subordinated, but that element has not always been required. *See In re Virtual Network Servs. Corp.*, 902 F.2d 1246, 1250 (7th Cir.1990) (subordination without misconduct); *In re Envirodyne Industries, Inc.*, 79 F.3d 579, 581 (7th Cir.1996) (same).

In *In re Virtual Network Servs. Corp.* it was held that a claim by the IRS for nonpecuniary tax loss penalties could be equitably subordinated to other creditors in the Chapter 11 proceeding. 902 F.2d at 1246. Because the purpose of tax penalties is to punish and deter, it was found unfair to punish or deter the Debtor's innocent creditors because of the Debtor's wrongdoing. *Id.* at 1250. While noting that the IRS was innocent and did not engage in wrongful conduct, it was nevertheless found that the IRS had waited too long to collect its debt therefore making it unfair to shift the burden of the debt to other innocent creditors. *Id.* In addition,

it was found that "as between the various unsecured creditors, those with actual losses in this instance are entitled to have the IRS's claims equitably subordinated." *Id.* That opinion showed that § 510(c)(1) allows for equitable subordination of a claim on a case-by-case basis based on a finding of unfairness, but without always requiring inequitable conduct to be demonstrated.

In *In re Envirodyne Industries, Inc.*, it was found that equitable subordination was appropriate under the facts presented despite the absence of inequitable conduct on behalf of the subordinated creditors. Those creditors obtained their status from their failure to tender shares in a short-form merger as well as from their failure to redeem their non-interest bearing shares in a timely manner. Because their dilatory behavior caused them to become creditors, it was found that their claims should be treated as weaker than those of other general unsecured creditors, thus warranting a form of subordination. *Id.* 79 F.3d at 583.

■ *In re Virtual Network Serv. Corp.* and *In re Envirodyne Industries, Inc.* are two cases in which an exception was found to the general rule that creditor misconduct must be found to warrant equitable subordination. In *Lifschultz*, both above cited cases were discussed as examples of the limited exceptions to the general rule. 132 F.3d. at 348–349. However, *Lifschultz* noted that when a claim is secured, as is in this case, inequitable conduct is always required before a claim may be subordinated under 11 § 510(c). *Lifschultz*, 132 F.3d 339 at nn. 10–11; *see also Moyer v. Official Creditor's Committee of Paint and Assembly Corp.*, 2001 WL 290384, at *6 (S.D.Ind.2001) ("The Seventh Circuit has never upheld the equitable subordination of a secured claim absent inequitable conduct."). Therefore, the limited exceptions to the general rule are inapplicable to the facts in this case.

Matrix contends that the Bank was an insider and argues that it need not show inequitable conduct to support its claim for subordination. It is wrong on both counts. The facts asserted in the More Definite Statement did not show that the Bank was an insider of the Debtor, and Matrix has failed to demonstrate that the Bank is an insider despite extensive discovery taken by it before filing its More Definite Statement. Matrix had access to all of the Bank's files and has deposed three current or former officers of the Bank.

■ Banks are not generally fiduciaries of their borrowers, but may be deemed a fiduciary where they "usurp" the borrower's ability to make business decisions. "In effect, the lending institution must become the alter ego of the customer before it can be held to a fiduciary standard." *CSY Liquidating Corp. v. Harris Trust and Sav. Bank*, 1998 WL 157065 at *17 (N.D.Ill.1998). Matrix contends that the Bank was an insider because of the following: (1) Williams consulted the Bank on major business decisions; (2) the Bank required the Debtor to hire a business consultant "acceptable to the Bank in its sole discretion," and the Debtor did so; (3) the Bank urged the Debtor to seek other financing when the debtor began to have financial problems; (4) the Bank had authority to exercise a Stock Pledge Agreement and thereby could have acquired a right to vote or sell the stock after November of 1997 because the Debtor was in default on the loan agreement for failing to inform the Bank about Matrix's prior liens (although it is not alleged that the Bank did ever exercise its right to acquire such stock rights or vote that stock and the Bank never did so); (5) in exchange for additional funding after the Bank declared the Debtor in default, the Bank asked for

and received an agreement to place all collected receivables in a "lock box"; and (6) the Bank had control over which creditors were paid after Debtor defaulted on its loan, and used that control to pay itself and entities related to Bailes and DePaul.

These pleaded facts do not support a claim that the Bank was an insider. Matrix has not averred facts which show that the Bank had either legal or *de facto* control of the Debtor. Nor does it demonstrate facts from which it can be concluded that the Debtor was a subsidiary of the Bank or that there was any degree of day-to-day management control by the Bank over Debtor. Most important, the key "insider" argument by Matrix is that because the Bank might have acquired stock power and day to day corporate control, the case should be viewed as though it had done so. Matrix thus asserts a Bank status based on what might have been done, but this was not done. Such sophistry does not prove the Bank was an insider. Because it is clear that the Bank did not exercise any possible stock option rights, Matrix has not and cannot prove its insider status.

Matrix also contends that the Bank gained incremental control over the Debtor. It gives some examples: In exchange for increasing the Debtor's credit line from $9 million to $12 million, the Bank required Bailes and De Paul to give unconditional loan guaranties, and also the Debtor was required to hire a consultant acceptable to the Bank. The Bank also negotiated the addition of the term "wherever located" to the clause in the security agreement which documented the extent of its lien interest in the Debtor's property in return for agreeing to extend the credit line until January 31, 2002. Matrix also points to the fact that the Bank declared the Debtor to be in default one day after its main customer, K–Mart, filed its own Chapter 11 Bankruptcy. Thus, the Bank is said to have obtained effective control over payments made by the Debtor, which were treated as overdrafts subject to Bank approval.

However, the Bank's foregoing efforts to protect its collateral were not either such degree of control or any type of egregious conduct that might support subordination of its loan. The Bank simply did not "exercise sufficient authority over the corporate debtor so as to unqualifiedly dictate corporate policy and the disposition of corporate assets." *In re Octagon Roofing*, 124 B.R. 522, 530 (Bankr.N.D.Ill.1991). Rather, taken as a whole, the Bank appears to have done nothing more than any prudent lender would have done under like circumstances as it watched its Debtor deteriorate economically. For instance, the demand for a lock box is a standard practice when dealing with a Debtor on the brink of bankruptcy. Likewise, requiring broader loan guaranties or collateralization before extending additional credit can hardly be viewed as uncommon or outside of the lending function. The Bank had a right to insist on additional collateral before lending. *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1358 (7th Cir.1990) ("Conditioning new money on higher security no more obliges a Bank to 'lend a helping hand' (in excess of contractual promises) than does setting a high rate of interest or taking security in receivables, other ways to deal with a lower probability of repayment."). Nor was the requirement that Debtor use an approved consultant more than a prudent step to aid the Debtor to improve its operations. It was not shown or alleged that the consultant harmed the Debtor's interests or controlled its operations.

In taking these steps, the Bank was not attempting to manage the Debtor; rather, it sought to manage the risk posed to its

collateral by the Debtor's shaky and deteriorating financial condition. "There is nothing inherently wrong with a creditor carefully monitoring his debtor's financial situation or with suggesting what course of action the debtor ought to follow." *In re Clark Pipe & Supply Co., Inc.*, 893 F.2d 693, 702 (5th Cir.1990).

Matrix has not averred facts showing that the Bank had day-to-day control over the Debtor's operations. Indeed, it complained that the Bank allowed the Debtor to misuse the credit line to finance expensive capital improvements instead of paying trade debt due to Matrix. That is, it complains that the Bank did not control Debtor so as to compel action that Matrix would have approved of. On that theory of negligence, Matrix pleaded itself out of court by suggesting that the Bank did not exercise the requisite level of control to be deemed an insider.

 Alternatively, even assuming *arguendo* that the Bank were an insider as Matrix asserts, being an insider does not mean that one's claim is automatically subordinated. *AutoStyle*, 269 F.3d at 745. As explained in *AutoStyle*:

> A finding of inequitable conduct requires more than a showing of undercapitalization. There must be evidence of other inequitable conduct. This is because any other analysis would discourage loans from insiders to companies facing financial difficulty and that would be unfortunate because it is the shareholders who are most likely to have the motivation to salvage a floundering company.

269 F.3d at 747. The pleader must show some evidence of misconduct on the part of the creditor before the burden shifts to the insider to show that the transaction was fair and in good faith. *Lifschultz*, 132 F.3d at 344. Matrix tried to show Bank misconduct by arguing that the Bank deliberately ignored the serious financial problems that existed between the Debtor and Matrix, as if it were the Bank's duty to protect another creditor. It also asserted that the Bank's due diligence was inadequate; otherwise, it could have found out about Matrix's asserted unrecorded liens on molds in its possession. But these allegations do not show misconduct sufficient to subordinate the Bank's claim. It is unreasonable to infer or assume that the Bank's failure to inquire about the possibility of Matrix liens was a deliberate attempt to lull Matrix into continuing to provide credit to the Debtor, and no facts were pleaded that demonstrate such intent. Indeed, it could be inferred that the reason why the Bank did not investigate Matrix's lien claim is that it assumed that absence of a UCC–1 filing by Matrix meant that there were no prior liens asserted by it, or that any possessory liens claimed by Matrix would be inferior to the Bank's recorded and perfected security interest. While Matrix asserts that equitable subordination is warranted in this case based on "unfairness," it as a trade creditor should have known to protect its claim by putting others on notice of it through the use of a public UCC–1 filing.

It short, facts are not pleaded and cannot be proven that demonstrate malevolent rather than ordinary business purposes in the Bank's dealings with Debtor.

## CONCLUSION

The Eighth Defense and detailed facts set forth in the More Definite Statement, taken together with inferences that might be derived therefrom, are legally insufficient to allow for equitable recharacterization or subordination of debt owed to the Bank. Matrix failed to show, and following full discovery and several years of opportunity cannot show, that the loans to the Debtor were not ordinary commercial

357

loans and arm's length transactions; hence the remedy of recharacterization is unavailable to it. Nor do the facts averred here rise to levels required to warrant the remedy of equitable subordination, and Matrix cannot prove either insider status or Bank impropriety.

Matrix did not subsequently seek to replead its Eighth Defense or More Definite Statement. Therefore, a separate order dismissing the Eighth Defense will now be entered, making such dismissal final and with prejudice.